**In re 211 EAST DELAWARE PLACE BLDG. CORPORATION.**

**No. 59144.**

District Court, N. D..Illinois, E. D.
March 17, 1936.

See, also, (D.C.) 7 F.Supp. 892.

Courshon, Carson & Freeman, of Chicago, Ill., and Taylor, Chasnoff & Willson, of St. Louis, Mo., for Bondholders' Committee.

Johnson, Swanstrom, Wiles & Clawson, of Chicago, Ill., for trustee.

Joseph Fisher and Deneen, Healy & Lee, all of Chicago, Ill., for debtor and its stockholders.

Thomas Sullivan, of Chicago, Ill., for petitioning creditors.

Pritzker & Pritzker, of Chicago, Ill., for Bondholders' Committee and Chicago Title & Trust Co., trustee.

Topliff & Horween, Edward Berkson, and Adams, Emerson & Branand, all of Chicago, Ill., for creditors.

EVANS, Acting District Judge.

The questions presented by the trustee in his request for instructions may be stated thus:

1. Where a petition for adjudication under section 77B (11 U.S.C.A. § 207) alleges but one act of bankruptcy, namely, the appointment of a receiver in an equity proceeding, and no objection is raised as to the sufficiency or character of said act of

bankruptcy, although the petition is contested on other grounds, and an adjudication follows, may the order of adjudication be later attacked collaterally on the ground that the alleged act of bankruptcy was not one which was defined by section 77B, as construed by the Supreme Court in Duparquet Huot & Moneuse Co. v. Evans, 56 S.Ct. 412, 80 L.Ed. ——, and Tuttle v. Harris, 56 S.Ct. 416, 80 L.Ed. ——, decided February 3, 1936?

2. If it appears that other acts of bankruptcy exist, may the original petition be amended to include them after adjudication?

3. Who may raise the insufficiency of a petition for an adjudication, and when?

4. May parties be estopped to assail an adjudication in bankruptcy under section 77B? What effect does the consent of a party who has appeared have upon the validity of the proceedings or the right of said party to later challenge the jurisdiction of the court when attacking or approving a plan of reorganization under section 77B?

On February 3, 1936, the Supreme Court filed its opinion in Duparquet Huot & Moneuse Co. v. Evans, 56 S.Ct. 412, 80 L.Ed. ——, and Tuttle v. Harris, 56 S.Ct. 416, 80 L.Ed. ——, holding that the term "equity receivership," as used in subsection (a) of section 77B (11 U.S.C.A. § 207 (a), does not include receivers appointed in a mortgage foreclosure suit. Inasmuch as the court in its adjudication recited that the receiver was appointed in a mortgage foreclosure suit and inasmuch as the appointment of a receiver in an "equity receivership" was the only act of bankruptcy charged in the petition of the creditors who sought to have 211 East Delaware Place Corporation adjudged a bankrupt, the trustee, through his counsel, has sought instructions from the court as to what course should be followed.

The answers to all the questions must depend upon the answer to the following question: May the order of adjudication in view of the allegations of the creditors' petition and the order of adjudication, be attacked collaterally? This question in turn depends upon whether the court had jurisdiction of the subject matter and the debtor when it entered the order of adjudication.

It seems we are safe when we assume:

1. There is a valid distinction between jurisdiction of the subject matter and the exercise of such jurisdiction.

2. The United States District Court has jurisdiction of the subject of bankruptcy.

3. Where a court does not have jurisdiction of the subject matter, its orders are void and consent of the parties cannot breathe life into them.

4. Section 77B is an amendment of and supplements the existing Bankruptcy Act.

5. Where the court has jurisdiction of the subject matter, but makes erroneous rulings during the course of the exercise of the court's jurisdiction, the only successful attack is through appeal. In other words, its orders or decrees cannot be collaterally attacked. In such instances the parties may waive jurisdiction over them and may, by consent or by waiver or by estoppel, lose their rights to assail the validity of orders or decrees entered. Failure to appeal gives to such order a res judicata status.

It is over the applicability of the first two propositions to the jurisdiction of a court of bankruptcy that any controversy arises. In other words, is failure of the petitioning creditors to allege a good and sufficient act of bankruptcy fatal to the court's jurisdiction of the subject matter? In the face of an insufficient act of bankruptcy, is the order void for want of jurisdiction or was the adjudication a judicial act in the exercise of jurisdiction? In the instant case it is worthy of note that the petition sufficiently stated a statutory act of bankruptcy under section 77B. It is inferable, however, from the order of adjudication that the proven act was, in view of the decision in Duparquet Huot & Moneuse Co. v. Evans, one not recognized as an act defined by the statute as an act of bankruptcy.

I am convinced that the failure of petitioners to prove the alleged act of bankruptcy did not go to the jurisdiction on the subject matter, but to the exercise of jurisdiction by the court. The court's error was curable only by appeal. Under the Bankruptcy Act, adjudications are either upon petitions by the debtor (called voluntary) or upon petitions of creditors (called involuntary). The admission or consent of the debtor (excepting in cases of collusion) or default of debtor would be sufficient to justify an adjudication without further proof. Where the debtor by its answer joins in the request for an adjudication, then for the purpose of determining jurisdiction the proceedings should be viewed as voluntary.

In the instant case there was no consent by answer. Neither was there opposition or objection by the debtor, or by any creditor. There was a default. Of the existence of the corporation and the effect of the forfeiture of corporate charter, I shall speak shortly. Subsequently, and long after the adjudication, the debtor, together with all of the stockholders joining, filed an answer admitting the allegations of the complaint and setting forth facts which disclosed acts of bankruptcy other than the one set forth in the petition. It admitted insolvency and inability to pay its debts—facts, the proof of which the record is most replete.

There are many interesting decisions which bear on the question of the court's jurisdiction as distinguished from the judicial act which was performed in exercise of the court's jurisdiction. There are so many that we may well confine our study largely to Supreme Court cases.

In First National Bank v. Klug, 186 U. S. 202, 22 S.Ct. 899, 900, 46 L.Ed. 1127, the question of fact was whether debtor was a farmer. The bankruptcy law exempted farmers from involuntary adjudication in bankruptcy. The jurisdiction of the court could be invoked only through voluntary petition.

The court said: "In this case * * * the district court had and exercised jurisdiction. The conclusion was, it is true, that Klug could not be adjudged a bankrupt, *but the court had jurisdiction to so determine, and its jurisdiction over the subject-matter was not and could not be questioned.*"

On the other hand there is the case of Vallely v. Northern Fire & Marine Insurance Co., 254 U.S. 348, 41 S.Ct. 116, 65 L. Ed. 297, where the court held that an adjudication of an insurance company upon default of the company was absolutely void. Such an order was not an improper exercise of jurisdiction but was an order in a cause where the court was without jurisdiction of the subject matter, and this objection could not be waived by the parties; that is to say, jurisdiction of the subject could not be conferred by consent of parties. The court must look to the statute, not to the action of parties, to determine the existence of jurisdiction. As a good but extreme illustration, I cite the attempt of a justice of peace to acquire a jurisdiction of a divorce cause by consent of the parties where the statute did not give to the court of the justice of peace jurisdiction to hear and determine divorce suits.

In Gratiot County State Bank v. Johnson, 249 U.S. 246, 39 S.Ct. 263, 63 L.Ed. 587, we find the court discussing the question, Who is bound by an adjudication in bankruptcy? In that particular suit the trustee in bankruptcy was suing the recipient of an alleged preference. The court held that the preferred creditor might litigate the question of insolvency at the time of the alleged preference as the said preferred creditor was not before the court nor could it get before the court when the adjudication occurred. Respecting those who were bound by the adjudication, the court said: "The Trustee contends that adjudication in bankruptcy, being in the nature of a judgment in rem, establishes not only the status of the debtor as a bankrupt, but also the essential findings of fact on which that judgment was based. *The adjudication is, for the purpose of administering the debtor's property, that is, in its legislative effect, conclusive upon all the world. * * * So far as it declares the status of the debtor, even strangers to the decree may not attack it collaterally.*"

Further, the court says: "The purpose of Congress in expressly authorizing creditors, as well as the debtor, to answer an involuntary petition in bankruptcy was to guard against an improvident adjudication and to protect those whose peculiar interests might be prejudiced by establishing the status of bankruptcy. * * * The grant of this right of intervention was harmonized with the general purpose of Congress to secure a prompt adjudication, by requiring that the appearance and answers of creditors be made within five days after the return day on the petition."

In New Lamp Chimney Co. v. Ansonia Brass & Copper Co., 91 U.S. 656, 23 L.Ed. 336, we have an action upon promissory notes upon which dividend had been paid in voluntary bankruptcy proceedings. An attack was made upon the regularity of the bankruptcy proceedings because, so it was asserted, the stockholders had not regularly authorized the proceedings. The instant plaintiffs had not contested the court's jurisdiction in bankruptcy proceedings. The court stated that inasmuch as a president of a corporation, if authorized, could file a petition and whether he had such authority was a question of fact to be determined by the District Court and, if there was any support for the court's action, it could only

be set aside in a direct proceeding. No attempt had been made to review the court's action by appeal. The court held the decree could no more be impeached collaterally than that of any court of general jurisdiction, and where a court has jurisdiction of the subject matter and appearances are duly entered, the decree is conclusive. The bankruptcy decree was in the nature of an in rem decree, and if the court rendering it had jurisdiction, it could only be assailed in direct proceeding.

Without quoting at length from them, it is submitted that the foregoing views find support in the following cases:. In re First National Bank of Belle Fourche et al. (C. C.A.) 152 F. 64, 11 Ann.Cas. 355; Conway v. German (C.C.A.) 166 F. 67; Bradley v. Huntington (C.C.A.) 277 F. 948; In re Broadway Savings Trust Co. (C.C.A.) 152 F. 152; Kay v. Federal Rubber Co. (C. C.A.) 46 F.(2d) 64; In re Southern Arizona Smelting Co. (C.C.A.) 231 F. 87; In re Veler (C.C.A.) 249 F. 633.

█ It is elementary that parties may waive or be estopped to attack an erroneous order entered in a cause wherein a court has jurisdiction of the subject matter and the person of the defendant.

Equally well established is the rule that parties to a proceeding which resulted in a decree of a court of competent jurisdiction may waive their right to attack an order which might otherwise be by them successfully assailed on a ground other than the one based on the court's lack of jurisdiction of the subject matter.

To Illustrate: In the administration of this estate, the subject matter being within the jurisdiction of the District Court, the parties, all of them, appeared in open court and asked this court to enter the order approving the plan of reorganization. In fact, prior to such action plans were by them submitted and all of the parties participated in a consideration of them. Time, as well as money, was expended by the trustee and his attorneys upon the assumption that the interested parties desired action. Under such circumstances, the parties are estopped to attack the plan which they submitted and requested the court to approve, provided always the court had jurisdiction of the subject matter.

Before passing from this subject, I call attention to two Circuit Court of Appeals decisions—In re S. W. Straus & Co., 67 F. (2d) 605, 609; In re Middle West Utilities Co., 70 F.(2d) 825, 826. The latter decision adopts the holding of the former. In each case we have a defective, involuntary petition—the defect consisted in the failure to allege a recognizable act of bankruptcy. In each case the petition failed to state a cause of action. The defect was that the pleader alleged conclusions instead of facts. The following statement appears in both opinions: "The petition in bankruptcy charged as the only act of bankruptcy the giving of preferences to unknown creditors in unknown amounts, aggregating $2,500. Except in stating a different aggregate sum, it is identically like the petition held insufficient by this court in Re Gaynor Homes, 65 F.(2d) 378. Hence the petition was subject to dismissal had the objection been taken in time. But, as our previous decisions indicate, such a petition gives the court jurisdiction, and the defect is one which may be waived by answer and going to trial. Bradley v. Huntington (C.C.A.) 277 F. 948."

There are two other phases of this case which bear upon the instructions which the court must give to the trustee.

The first is the effect of the consent of all parties to the plan of reorganization and their right to avail themselves of what seems to be a just and practical solution of their vexatious questions. The second deals with the effect of the debtor's surrender of its corporate charter prior to adjudication.

As before stated, all of the parties who have appeared in this proceeding have agreed to the plan of reorganization. It was born after hours of labor, and its prompt execution is much desired by those whose savings are invested in its stocks, bonds, and other obligations. For years the enterprise has been barren. No dividends have been paid and the creditors have received nothing as interest or on principal. The question to them is not a doubtful legal theory but an actuality. The court must view the problem as such. Rather than indulge in refinements of legal distinctions which are difficult to comprehend even by those learned in the law, it is my duty to advise the trustee to avoid legal pitfalls, but at the same time look to the object of these legal proceedings and attain, if possible, the desires of the creditors. Since this question of jurisdiction has arisen, all the stockholders have appeared and joined in an answer consenting. to the adjudication. Ordinarily, the con-

sent of the debtor, in the absence of collusion, would be conclusive on the subject. For if the proceedings, so far as jurisdiction is concerned, be thereafter viewed as voluntary, all doubt of the validity of the adjudication is removed.

Moreover, all the creditors have united in consenting to the order approving the plan of reorganization. This united consent of all interested parties is most important. The reorganization plan is the product of the efforts and the agreement of the parties. Had there been no bankruptcy proceedings the parties might have, if they could have agreed, worked out a like solution of their conflicting interests. The plan calls for a new corporation and the issuance of securities in place of the ones held by the creditors of the old corporation. The query naturally arises: If all the parties who are interested agree, who is there to attack either the proceedings or the consummated plan of reorganization? The mere fact that the plan of reorganization originated in the court of bankruptcy would afford no valid basis for its upset. It may be that there are a few bondholders who have not appeared formally in this matter and consented to the plan of reorganization. The court is not advised of the existence of any such creditor or bondholder. The court is advised that a large majority, probably more than 85% of the creditors and 100% of the stockholders, have through regularly employed attorneys formally consented to the plan. In fact, they have requested the court to approve of the plan. Notwithstanding any uncertainties which have arisen they are just as united in their approval of the plan as they were before the Supreme Court decided the two above-cited cases.

There is another phase of this question which is not to be ignored. The mortgagor, the debtor in these proceedings, was a corporation. After the depression and the abrupt fall in values, the corporation failed to make necessary reports to the state of Illinois and its charter was lost. It deliberately went out of existence. The answer which was filed for the corporation (above referred to) was filed by all of the stockholders. To the extent that they were able so to do, they spoke for the corporation. They also spoke for themselves as the successors to the corporation.

The Circuit Court of Appeals of this circuit has held in Re 211 East Delaware Place Building Corporation, 76 F.(2d) 834, that the forfeiture of the charter of the corporation did not prevent the creditors from proceeding against the debtor in the court of bankruptcy. The only effect which this loss of corporate existence may have upon a bankruptcy proceeding is in respect to the inability of the corporation to admit acts of bankruptcy or state of insolvency or to file a voluntary petition. The creditors should be placed in no worse position because the debtor committed suicide, so to speak. The creditors' position should be as good as it would have been if the debtor still lived. There were thousands of corporations in Chicago which, either out of the hopelessness of the situation or a desire to avoid officers' and directors' liability, failed to keep their charters alive following the crash of 1929. The creditors were entirely innocent in all such cases. In fact it was beyond their power to maintain the debtor's corporate existence. They were helpless. The failure of the debtor to answer the petition in the first instance or to maintain books and records so that petitioners might have gathered all the facts bearing on its acts of bankruptcy should not defeat the petitioning creditors' right to invoke the court's jurisdiction. Likewise, the answer of all the stockholders, when they were finally and fully advised of the situation was an admission of the debtor's insolvency and of its inability to meet its debts. It was in substance a joinder in the petitioners' request for an adjudication.

However, we are bound by the decisions in Tuttle v. Harris, 56 S.Ct. 416, 80 L.Ed. —, and Duparquet Huot & Moneuse v. Evans et al., 56 S.Ct. 412, 416, 80 L.Ed. —, decided by the Supreme Court on February 3, 1936. We are obliged to apply them and give to them full breadth of construction notwithstanding their application may materially interfere with the success of those who are earnestly endeavoring to clean up the over-loaded-with-debt real estate ventures in Chicago.

The facts in the instant case are distinguishable from those considered by the Supreme Court in the cases above cited first in that the debtor in the instant case has ceased to exist. When the petition in bankruptcy was filed the corporation had, for failure to comply with the laws of the state of Illinois wherein it was organized, lost its charter. Moreover, it was insolvent and unable to pay its debts. The statement of the law that upon dissolution of corporations the corporation's assets pass to the

stockholders was hardly capable of a practical application. Had there been assets it would have been necessary in the foreclosure suit to have located the parties to ascertain their number and ownership. There were, however, no assets to pass to the stockholders. The receiver named by the state court was not *dispossessing the debtor*. It was not merely collecting rents and profits. It took possession of all the property of a defunct mortgagor. The creditors were the *only* parties interested (in view of the debtor's insolvency and its forfeiture of franchise). In these respects the case is different from the cases before the Supreme Court.

Moreover, the suggestion (it can hardly be called a holding) in the last paragraph of the decision in the Duparquet Case has application here. It says: "An act of bankruptcy results inter alia if a 'person,' natural or corporate, has made a general assignment for the benefit of creditors, or if 'while insolvent, a receiver or a trustee has been appointed, or put in charge of his property.' Bankruptcy Act, § 3a (5), 11 U.S.C.A. § 21 (a) (5). There is support for the view that to satisfy this provision the receivership must be general, as contrasted with a receiver incidental to the enforcement of a lien. Standard Accident Insurance Co. v. E. T. Sheftall & Co. (C. C.A.) 53 F.(2d) 40, 41. We need not go into that question now. *Enough for present purposes that the receiver was not appointed or put in charge 'while' the debtor was 'insolvent.'"*

What was not necessary for the court to decide in that case is pronouncedly present in the instant case. Not only was the debtor insolvent, but it had demised. Whether the demise was suicidal in character or merely the result of palsy, senility, or debility is immaterial. Non-existent and insolvent, the property which was its only asset was placed in the hands of a receiver. But for the doubt cast upon said section 3a (5) of the Bankruptcy Act as amended in 1926 (11 U.S.C.A. § 21 (a) (5), we would unhesitatingly hold it applicable here.

Section 21 (a) (5), 11 U.S.C.A., reads as follows: "Acts of bankruptcy by a person shall consist of his having * * * (5) made a general assignment for the benefit of his creditors; or, while insolvent, a receiver or a trustee has been appointed, or put in charge of his property; * * *."

In view of the distinction which is made by the court in the Duparquet Case between equity receiverships and other receiverships, the language is significant. Here we find no reference to an equity receiver. We find a particular situation expressly covered by the statute. It therefore governs like situations to the exclusion of general provisions. If the debtor, while insolvent, has a receiver or a trustee appointed, *or* put in charge of his property, an act of bankruptcy has been committed. *Insolvency,* therefore, can *not* be ignored. Likewise, it can not be assumed that Congress which in one section speaks of an equity receiver and in another section refers to a different kind of an official "a receiver or a trustee" meant the same receiver.

Inasmuch as the corporation which was adjudged a bankrupt in the instant case was insolvent and "while insolvent" had *a receiver or a trustee* appointed and put in charge of its property, I am unable to reach any other conclusion than that an act of bankruptcy was charged. The "receiver or trustee" there referred to need *not* be an equity receiver.

As a result of the foregoing, I conclude:

(1) Where a court of bankruptcy has jurisdiction of the subject matter and of the person of the bankrupt, its order of adjudication may only be attacked by appeal. It can not be collaterally assailed.

(2) Where the debtor in answer to an involuntary petition by three creditors admits the acts alleged and joined in the request for an adjudication, for the purpose of determining jurisdiction, the proceedings should thereafter be viewed as a voluntary petition in bankruptcy.

(3) Jurisdiction is more extensive in voluntary proceedings than in involuntary cases.

(4) Where a court of bankruptcy has jurisdiction of the subject matter and of the debtor, its ruling on any material allegation of the petition constitutes judicial exercise of jurisdiction reviewable as to its correctness only by appeal, and is not determinative of the existence of jurisdiction.

(5) When it appears that at the time of the filing of the petition in bankruptcy and at the date of the adjudication, the debtor is insolvent and unable to pay its debts, it has committed an act of bankruptcy if it

surrenders its charter or fails to maintain its corporate existence and a receiver is appointed in a foreclosure suit brought against it.

(6) Section 21 (a) (5), 11 U.S.C.A. defines an act of bankruptcy which is different from that defined by 77B (i), 11 U.S.C.A. § 207 (i). The receiver referred to in the latter section is an equity receiver such as is defined in Duparquet Huot & Moneuse v. Evans, et al. The receiver referred to in section 21 (a) (5) may be a receiver appointed by the court in a foreclosure suit. Section 21 (a) (5), however, applies only where the debtor is insolvent.

The court therefore instructs the trustee to proceed with the plan of reorganization upon which all interested parties have agreed and which has met the approval of this court.

In concluding the court congratulates the parties and their counsel for their willingness to make concessions and the unanimity and solidarity of their present efforts. If they do not permit their forces to be divided by dissension and discord, they will in another year receive some interest on their new investments.

Still greater effort to speed up the work of carrying out the plan of reorganization should be the aim of the trustee. The delay of the past four months has nearly wrecked what is a most creditable work of reorganization in this case.