236

**McCLUNG et al. v. HILL et al.\***
**No. 8683.**

Circuit Court of Appeals, Fifth Circuit.
April 14, 1938.

C. W. Watts and Arthur W. Jordan, both of Clearwater, Fla., and F. T. Peebles, of Dunedin, Fla., for appellants.

R. W. Withers, of Tampa, Fla., and Harry L. Thompson and Edgar John Phillips, both of Clearwater, Fla., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

When, in September, 1936, Whitesell-McClung Hardware Company was dissolved by proclamation of the Governor, pursuant to chapter 16880, Laws of Florida, 1935, for failure to pay franchise taxes, appellants were minority stockholders, and with S. A. Whitesell, its president, constituted the board of directors of the corporation. Thereafter, though, under Whitesell's management the corporation continued to do business, the internal dissension between the Whitesell-McClung interests, which had before the proclamation manifested itself in a struggle for the life of the corporation, became a struggle for control of its funeral obsequies and interment, and of the administration in liquidation of its property. The majority wished it decently buried by, and interred in, a federal cemetery, to wit, bankruptcy, and to have its assets liquidated in that jurisdiction. The minority sought state burial and administration. To attain its end the majority caused involuntary bankruptcy proceedings to be instituted; the minority applied in the state court for a receiver. Thus raging on two fronts, the tide of battle rose and fell, with here a federal and there a state repulse, but no retreat. Like the old Saxon warrior, each side, when repulsed, would "lie it down for to bleed a while, and then would rise and fight again." Matters standing thus, but with victory wavering a little toward the banners of the minority, because of a finding in the bankruptcy proceeding that the act of bankruptcy relied on had not been committed by the corporation, the majority interests determined to, and did, take advantage of

\*Rehearing denied June 4, 1938.

chapter 17803, Acts of Florida, 1937, effective June 8, 1937, amending chapter 16880, Acts of 1935. This act provided that any corporation theretofore dissolved under the act of 1935 for failure to pay capital stock tax, might, by paying the taxes delinquent, and filing the reports called for, have its corporate entity restored, and that "the receipt of the Secretary of State shall be issued for such payments and in such cases shall recite that the said corporation has been fully restored to corporate entity * * * and the said restoration shall have effect ab initio from date of dissolution of such corporation." The delinquent taxes having been paid, and the receipt and certificate of the secretary received, at a stockholders' meeting, notice of which was duly given, the act of the president in paying the taxes and reinstating the corporation was approved and ratified, new directors were elected, and a resolution was adopted admitting the insolvency of the corporation, and authorizing it to file a voluntary petition in bankruptcy. It did this on August 13, 1937, and it was on the same date adjudicated a bankrupt. Thereafter appellants, granted leave to intervene, moved to vacate the adjudication and to dismiss the petition. The motion was in substance that the Whitesell-McClung Hardware Company had been dissolved in September, 1936, under chapter 16880, Acts of 1935; that movants, together with Whitesell, had become trustees for the corporation, and that under chapter 17804, Florida Acts of 1937, amending chapter 16880, § 9, when the bankruptcy petition was filed, the corporation had ceased to exist as a corporation, and no person or persons had any right or authority to take any steps for the conservation or disposition of its assets, except the trustees.

The company filed an answer, in which it set fully forth against the movants its tale of ancient wrongs and grievances, and of all of the efforts, internal and external, the contending parties had made to control the corporation in its life, and its body after death, declared that the corporation had been revived by compliance with chapter 17803, Acts of 1937, and as revived, had, under due and proper authority, petitioned for adjudication as, and been adjudicated, a voluntary bankrupt.

The District Judge, of the opinion: (1) That the state having reinstated and revived the corporation, no one, except one who had acquired vested rights in the dissolution, had any standing to collaterally attack its corporate existence; (2) that though the charter was forfeited and the corporation dissolved by gubernatorial proclamation, a court of bankruptcy could adjudicate the corporation bankrupt and administer its assets for the benefit of its creditors; (3) and that the forfeiture provision of the 1935 act was merely a revenue measure, and the state could provide by statute for reinstatement of the corporation, upon its payment of the delinquent taxes, denied the motion to vacate the adjudication, and also the motion to dismiss the petition. This appeal challenges that order. By it appellants seek to maintain: (1) That a court of bankruptcy may not take jurisdiction of the assets of a dissolved corporation, to administer them in bankruptcy; (2) that whatever the case generally as to the jurisdiction of a court of bankruptcy over dissolved corporations, where that jurisdiction has been invoked by creditors in involuntary proceedings, Hammond v. Lyon Realty Co., 4 Cir., 59 F.2d 592, jurisdiction was not properly exercised here, because the corporation having been destroyed and the administration of its affairs having been vested in its trustees, those who attempted to file the petition as the act of the corporation were without authority to do so, In re 211 East Delaware Place Bldg. Corp., D.C., 14 F.Supp. 96; cf. Chicago Title & Trust Co. v. Wilcox Bldg. Corp., 302 U.S. 120, at page 127, 58 S.Ct. 125, 128, 82 L.Ed. ——; (3) if after the dissolution the corporation could have been revived under the 1937 act, this could have been done only by the trustees or the stockholders as a whole, and not, as was done here, by one of the trustees, the president of the company, and there was therefore not only no authority in those who authorized the filing of the voluntary petition to act for it, but there was no effective revival of the corporate life, and no corporation in existence to be adjudicated.

Appellees stand upon compliance with the revival act of 1937 as conclusively established by the receipt and certificate of the Secretary of State. They insist that the payment of and acceptance by the state of the delinquent taxes, evidenced by the issuance of the statutory receipt has, as between the company and the state, fully revived the corporate life ab initio as of the dissolution in September, with the result that no one but the state can attack the corporate character of the company, none

but the state question its existence as a corporation.

Appellants put their confidence in Chicago Title & Trust Co. v. Wilcox Bldg. Corp., supra, holding that a court of bankruptcy will not entertain proceedings under section 77B, 11 U.S.C.A. § 207, to reorganize a corporation dissolved by judicial proceedings in accordance with the laws of the state of its creation, the time for winding up under the state law having expired. They put their confidence too, in Rossi v. Caire, 186 Cal. 544, 199 P. 1042, 1046, a decision of the Supreme Court of California holding that a solvent corporation, whose charter had been forfeited for nonpayment of its license tax, and which had been revived under a retrospective statute, may not, over the objection of a stockholder that he is entitled to have the assets distributed, carry on a continuing corporate existence. Appellees insist that neither of the cases are applicable here. They answer the Chicago Title Case by saying that there the corporation had been dissolved by judicial decree, the two years given by statute for it to administer its affairs were ended, and there was no revival of it under statutory provision. Here though the corporation had indeed been dissolved by the Governor's proclamation as a part of a revenue measure, to collect the corporation taxes, not one year of the three years given by the general statutes of the state for winding up, but only a few months, had expired. The charter had been revived by compliance with the 1937 act, and the effort was not to reorganize the corporation as a continuing concern, but to liquidate and wind it up in bankruptcy. As to the California case, they say that what was there decided was not that an insolvent, dissolved corporation could not be revived so as to be liquidated in bankruptcy, but that, over the protest of a stockholder timely taken, a solvent dissolved corporation could not be continued in life as a going concern. In that case the court declared: "In any case wherein a former stockholder did not diligently assert his objection to any revival of the former corporation which would have the effect of destroying his rights under the statutory trust, his consent under such circumstances would be implied, or he would be held estopped to urge that he had not consented."

We think appellees have the right of it. It is settled law that statutes which, providing for forfeiture, provide also for its remission with restoration of the corporate life, are valid, and when complied with they restore the corporation as though it had never been dissolved. No case is cited, we have found none, holding that, as regards the question of the revival of the corporation so that it may sue and be sued, and confessing its insolvency, obtain voluntary liquidation in bankruptcy, the state may not, by retrospective statute, provide for a remission of the forfeiture and restoration of the corporate life. The Chicago Title Case is not at all in point. Not only were the circumstances of the dissolution different there, but there was no statutory revival, while here though there was a formal proclamation of dissolution in September, the company continued to function as a corporation and within the year, under statutory authority, revived its corporate life. In the Chicago Case, too, the effort was to reorganize the company as a going and continuing concern. Here the effort was merely to liquidate it in bankruptcy.

Appellees insist that though the 1935 act under which the corporation was dissolved makes no provision for the continuance of the corporation for the purpose of winding up, both sections 6021 and 6571 of the Comp.Gen.Laws Fla.1927, provide that "all corporations shall continue bodies corporate for the term of three years after the time of dissolution from any cause, for the purpose of prosecuting or defending suits by or against them and enabling them gradually to settle and close their business, to dispose of and convey their property, and to divide their capital stock" "but not for the purpose of continuing the business for which said corporation shall have been established."

Appellants insist that these statutes, though general in terms, do not apply to corporations dissolved as this one was, for nonpayment of corporation taxes. Appellees insist that, under these statutes, without regard to the revival of the corporation, the bankruptcy proceedings were properly instituted and may be maintained.

We agree with appellees that these statutes, in their general terms, embrace the corporation in question; but we do not agree with them that under them, apart from the revival, the company's resort to voluntary bankruptcy can be sustained. The difficulty here, the revival aside, is

not that there is no corporation to be put into bankruptcy, but that those who filed the voluntary petition in bankruptcy were without authority to do so. Grand Lodge, Knights of Pythias, v. O'Connor, Receiver, 5 Cir., 95 F.2d 477; In re 211 East Delaware Place Bldg. Corp., D.C., 14 F.Supp. 96. Appellees must, and we think they can, stand upon the revival statute. Compliance with its terms has, we think, restored the corporate functions so as to make valid the corporate proceedings which resulted in the resolution authorizing, and the petition for, voluntary bankruptcy. Retrospective as they were, as relied on here they have deprived no one of any right, confirmed no new right in any. They have merely made the remedy of bankruptcy available instead of confining the company to liquidation through its trustees, and the statute having no further retrospective effect here, this may not be complained of by appellants. Diamond State Iron Co. v. Husbands, 8 Del.Ch. 205, 68 A. 240, 241; Fletcher Encyclopaedia of Corporations, Vol. 16, § 8156; Lyon-Gray Lumber Co. v. Gibraltar Life Ins. Co., Tex.Com.App., 269 S.W. 80. Cf. McKee v. Standard Minerals Corp., 18 Del.Ch. 97, 156 A. 193.

We do not find it necessary to decide, and we do not decide, whether the California case was rightly decided. We merely decide that no such case as that is presented here. Here there was continuing corporate life for three years, for the purpose of winding up and for distribution. Here there was a revival of the statutory authority by the payment of taxes which had caused the forfeiture, and the remission of forfeiture and restoration to corporate life. Here was an insolvent corporation, in the throes of an internecine struggle between the stockholders over who should dismember and divide its corpse. Here the majority stockholders, under authority of the statutory revival of the charter, have consented that the liquidation proceedings be conducted in the bankruptcy court. Here the officers of the corporation, selected under authority of the revival proceedings, have consented. Appellants' attack upon the proceedings is a mere collateral one. It is not to prevent the company's continuing as a going concern, or prevent its liquidation; it is to have it liquidated in a particular way. Here is no question, as in the Chicago Title Case, of an effort to reorganize a corporation which the state has declared dead. Here

is a case of the winding up, in an orderly way, of the affairs, and the distribution of the assets of the corporation, which at least, as to the state, has been revived and recognized as such, and the only ground of opposition is the bare one that the proceedings have not been effective to restore the corporate life. No injury to the protestant appellants is claimed or shown. The motion to dismiss was correctly denied. The order appealed from is affirmed.