139 So.2d 923 (1962)
Samuel SPECTOR, Appellant,
v.
Lester HART and Lester Hart Galleries, Inc., Appellees.
No. 2635.
District Court of Appeal of Florida. Second District.
April 13, 1962.
*924 Harry G. Carratt, Morgan, Carratt & O'Connor, Fort Lauderdale, for appellant.
Merle Litman, Talianoff, Waller & Litman, Miami Beach, for appellees.
ALLEN, Acting Chief Judge.
This is an appeal from a summary final judgment entered in favor of defendant-appellee Lester Hart, and against the plaintiff-appellant Samuel Spector.
The plaintiff filed his amended complaint against the defendants Lester Hart and Lester Hart Galleries, Inc. seeking to recover from defendants certain sums allegedly due plaintiff for the rental of his property, under lease executed by the defendant corporation. Hart was joined as a defendant because he, as president of the corporation, executed for the corporation the lease in question when said corporation had been dissolved for failure to pay its franchise taxes. The lower court entered a summary judgment in favor of Hart since the corporate status had been restored by the payment of the taxes due the state.
Counsel on each side have cited no Florida case directly on point, nor have we found one by our own research. However, we have the benefit of an opinion written by Judge Hutcheson in the case of McClung v. Hill, 96 F.2d 236 (5th Cir.1938) to which we will hereinafter allude.
The appellant states the points on appeal as follows:
1. "Whether or not defendant, Lester Hart, is personally liable for having executed a lease as president of and on behalf of a dissolved corporation, though its corporate entity was thereafter restored, and consequently, whether or not the lower court erred in granting summary judgment in favor of defendant and in denying plaintiff's motion for summary judgment."
2. "Whether or not the pleadings, exhibits and affidavits in this cause support the entry of a summary final judgment in favor of the defendant, Lester Hart, and consequently, whether or not, the lower court erred in granting a summary judgment in favor of said defendant."
Section 608.37, Florida Statutes, F.S.A., provides as follows:
"(1) Any domestic corporation which has been dissolved or foreign corporation which has had its permit to do business within the state cancelled by operation of § 608.36 for failure to pay the capital stock tax may have its corporate entity or its permit to do business restored by filing with the secretary of state the reports required by § 608.32 and payment of the three years capital stock tax which was due at the time of dissolution or cancellation *925 of permit. The receipt of the secretary of state shall be issued for such payments and in such cases shall state that the corporation has been fully restored or its permit to do business in the state fully revived and restored. Restoration shall be effective from the date of dissolution or cancellation of permit."
It is the contention of the appellant that since the corporation was dissolved at the time the president executed the lease in question, that the president was individually liable on the lease. Counsel for appellant, in their excellent brief, cite, among other cases, Leibson v. Henry, 1947, 356 Mo. 953, 204 S.W.2d 310, wherein it is stated:
"* * * It seems to us a court should recognize plaintiffs' personal liability for obligations so incurred by them in such unlawful transaction of business in the corporate name, transgressing their powers as trustees. If a court should otherwise rule, such a ruling would be in violation of the plain purpose of the law, open the door to fraud, and sanction the former directors' operation of the business, without liability, affording opportunity for wasting or diverting the corporate assets, thus subjecting stockholders, creditors and the State to a remediless loss of their rights to avail themselves of the corporate property. It seems no Missouri decision supports or opposes our decision upon this very question, but the bases of the decisions of courts of other jurisdictions lend support to our ruling. Ewald Iron Co. v. Commonwealth, 140 Ky. 692, 131 S.W. 774; Jones v. Young et al., 115 W. Va. 225, 174 S.E. 885; Poritsky v. Wachtel, 176 Misc. 633, 27 N.Y.S.2d 316; Trower et al. v. Stonebraker-Zea Live Stock Co. et al., D.C., 17 F. Supp. 687."
In 13 A.L.R.2d at 1220 there is a discussion of cases pro and con with reference to the reinstatement of repealed, forfeited, expired, or suspended corporate charters as validating acts performed in the name of a corporation prior thereto. It is stated on page 1220:
"That the reinstatement or revival of the corporate powers of a corporation validates its acts during such interim would seem to follow sometimes from the plain language of the applicable statute, as where it provides that, upon the issuance of a certificate reviving a corporation whose charter has expired, `the acts and doings of such corporation, in the period between the date of expiration and the date of reviver, shall be thereby confirmed and held as the acts and doings of the original corporation so revived,' which statute has been construed in Huey v. National Bank of Fitzgerald (1933) 177 Ga. 64, 169 S.E. 491, and West v. Flynn Realty Co. (1936) 53 Ga. App. 594, 186 S.E. 753, holding that a corporation whose charter has expired must be treated, during the period within which it may be revived, as a de facto corporation."
In 2 Hornstein, Corporation Law and Practice § 812 (1959) at page 354, it is stated:
"Whether the penalty for franchise tax delinquency be suspension or forfeiture, its objective is simply to produce revenue  to prevent use of the corporate form without compensation to the state. Reinstatement, therefore, is usually permitted nunc pro tunc upon payment of the tax arrears (plus penalties). Under such statutes the corporation's existence as a legal entity is not completely extinguished. Under other local statutes (some of which have since been altered), courts have refused to recognize any acts qua corporation during the period of forfeiture until the date of revivor except so far as necessary to protect creditors. There is some uncertainty in at least one state (Illinois) whether even revivor can give the corporation anything *926 more than de facto status once its charter has been forfeited."
In the case of McClung v. Hill, 96 F.2d 236 (5th Cir.1938) hereinbefore referred to, the Court, in its opinion, said:
"* * * This act provided that any corporation theretofore dissolved under the act of 1935 for failure to pay capital stock tax, might, by paying the taxes delinquent, and filing the reports called for, have its corporate entity restored, and that `the receipt of the Secretary of State shall be issued for such payments and in such cases shall recite that the said corporation has been fully restored to corporate entity * * and the said restoration shall have effect ab initio from date of dissolution of such corporation.' The delinquent taxes having been paid, and the receipt and certificate of the secretary received, at a stockholders' meeting, notice of which was duly given, the act of the president in paying the taxes and reinstating the corporation was approved and ratified, new directors were elected, and a resolution was adopted admitting the insolvency of the corporation, and authorizing it to file a voluntary petition in bankruptcy. * *
* * * * * *
"The District Judge, of the opinion: (1) That the state having reinstated and revived the corporation, no one, except one who had acquired vested rights in the dissolution, had any standing to collaterally attack its corporate existence; (2) that though the charter was forfeited and the corporation dissolved by gubernatorial proclamation, a court of bankruptcy could adjudicate the corporation bankrupt and administer its assets for the benefit of its creditors; (3) and that the forfeiture provision of the 1935 act was merely a revenue measure, and the state could provide by statute for reinstatement of the corporation, upon its payment of the delinquent taxes, denied the motion to vacate the adjudication, and also the motion to dismiss the petition. * * *
"Appellees stand upon compliance with the revival act of 1937 as conclusively established by the receipt and certificate of the Secretary of State. They insist that the payment of and acceptance by the state of the delinquent taxes, evidenced by the issuance of the statutory receipt has, as between the company and the state, fully revived the corporate life ab initio as of the dissolution in September, with the result that no one but the state can attack the corporate character of the company, none but the state question its existence as a corporation.
* * * * * *
"We think appellees have the right of it. It is settled law that statutes which, providing for forfeiture, provide also for its remission with restoration of the corporate life, are valid, and when complied with they restore the corporation as though it had never been dissolved. No case is cited, we have found none, holding that, as regards the question of the revival of the corporation so that it may sue and be sued, and confessing its insolvency, obtain voluntary liquidation in bankruptcy, the state may not, by retrospective statute, provide for a remission of the forfeiture and restoration of the corporate life. The Chicago Title Case [Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp., 302 U.S. 120, 58 S.Ct. 125, 82 L.Ed. 147] is not at all in point. Not only were the circumstances of the dissolution different there, but there was no statutory revival, while here though there was a formal proclamation of dissolution in September, the company continued to function as a corporation and within the year, under statutory authority, revived its corporate life. In the Chicago Case, too, the effort was to reorganize the company *927 as a going and continuing concern. Here the effort was merely to liquidate it in bankruptcy."
The primary purpose of § 608.37, Florida Statutes, F.S.A., is the collection of delinquent taxes. A large number of corporations in Florida overlook the payment of taxes and the filing of various required forms with the Secretary of State. Circuit judges in the state, with few exceptions, have had the experience of dealing with cases instituted against or by corporations, which cases have been dismissed or stayed pending the payment of the excise taxes. Corporate business was carried on even after suspension or dissolution by the state but upon payment of such taxes the statute specifically provides that the Secretary of State shall issue a receipt which shall state that the corporation has been fully restored or its permit to do business in the state fully revived and restored; and that restoration shall be effective from the date of dissolution or cancellation of the permit.
The late Chief Justice Vanderbilt of the Supreme Court of New Jersey, in the case of J.B. Wolfe, Inc. v. Salkind, 3 N.J. 312, 70 A.2d 72, 13 A.L.R.2d 1214, said:
"The object of these statutes being solely the raising of revenue for the State (the police aspects of the situation being covered by separate statutory provisions hereinafter referred to) it would be inequitable to permit third persons, such as the defendants here, who had dealt with the corporation in the period when its charter had been forfeited to defend suits against them on this ground after the corporation had complied with R.S. 54:11-5, N.J.S.A., and it had been reinstated as a corporation and entitled to all its franchises and privileges. In good conscience the defendants, who are strangers to the dealings between plaintiff and the State, should not be allowed to take advantage of the plaintiff's default in paying its taxes to escape their own obligations to the plaintiff, when its default has been cured by its subsequent compliance with the statutory requirements."
We hold that the effect of paying delinquent taxes to the state under the provisions of § 608.37, Florida Statutes, F.S.A., is to ratify and confirm the lease in this case as though the corporation was not delinquent on the date it executed the lease in question. Thus we hold that the lower court should be affirmed.
We have not overlooked the other question stated by the appellant but from a study of the affidavits, pleadings and exhibits attached thereto, we find that there is no dispute of fact and that a question of law exists which was properly determined in appellee Hart's favor by the trial judge.
Affirmed.
WHITE, J., and SANDLER, HARRY, Associate Judge, concur.