STEARNS & FOSTER COMPANY, a corporation, R. S. Owens & Company, a corporation, and Clarke Floor Machine, Div. of Studebaker Industries, a corporation, Appellants,

v.

PACIFIC BOWLING & BILLIARD CO., a Washington corporation, Appellee.

No. 21421.

United States Court of Appeals Ninth Circuit.

March 25, 1968.

Leon Uziel (argued), of Uziel & Faltys, Malcolm L. Edwards, Seattle, Wash., for appellant.

Jerome Shulkin (argued), Seattle, Wash., for appellee.

Before MERRILL and BROWNING, Circuit Judges, and JAMESON, District Judge.

JAMESON, District Judge:

On June 22, 1965, appellants filed a creditor's petition seeking to have appellee adjudicated a bankrupt and alleging as acts of bankruptcy (1) preference, (2) fraudulent transfer, and (3) appointment of a receiver or trustee. On November 30, 1965, an order was entered by the Referee in Bankruptcy adjudicating appellee a bankrupt on the basis of Section 3a(5) of the Bankruptcy Act, 11 U.S.C. § 21a(5), which provides in pertinent part that it is an act of bankruptcy if a debtor "while insolvent or unable to pay his debts as they mature, procured, permitted, or suffered voluntarily or involuntarily the appointment of a receiver or trustee to take charge of his property".[1] On review the district court found that appellee had not committed an act of bankruptcy and entered an order dismissing the petition. This appeal followed.

On March 8, 1965, an assignee for collection of one of the unsecured creditors of appellee commenced an action in the Superior Court of the State of Washington for King County seeking the appointment of a receiver of the assets of appellee. Appellee filed a "plan of arrangement" pursuant to Revised Code of Washington 23.01.620.[2]

An amended plan filed April 30, 1966, provided that (1) all taxes and other debts having priority be paid in full and in cash upon confirmation; (2) all unsecured debts be settled and satisfied by delivering to each holder a noninterest bearing, nonnegotiable promissory note for 50 per cent of the debt of the creditor, payable in five annual installments; (3) the debtor deliver a chattel mortgage covering all of its merchandise inventory, the mortgage to be held by a trustee designated by the court to secure the payment of the nonnegotiable notes;[3] and (4) the president of the debtor corporation file an agreement subordinating his debt to all other creditors.

The requisite number of creditors agreed to the amended plan. Appellants did not accept the plan and filed the petition in bankruptcy.

An order was entered in the state court proceedings on June 11, 1965, confirming the amended plan of arrangement and appointing a trust mortgagee. Appellee executed a chattel mortgage covering its stock of merchandise. Under the terms of the mortgage, the mortgagor was entitled to possession prior to default and to sell merchandise in the regular course of business. It was required to keep a

---

1. The bankruptcy court found that the other two alleged acts of bankruptcy had not occurred.

2. R.C.W. 23.01.620 authorizes a "compromise or arrangement" between a corporation and its creditors or any class of them, and provides that if a "majority in number representing three-fourths in value of the creditors or class of creditors" agrees thereto, the "compromise or arrangement and the said reorganization shall, if sanctioned by the court, be binding on all the creditors or class of creditors * * * and also on

the corporation and its liquidating trustees or receiver, if any".

3. The plan provided further: "The debtor shall pay over the annual installments due creditors to said Trustee, who shall make disbursement to the note holders, and said mortgage to provide for reasonable compensation to said Trustee and further provide that the debtor shall account and pay over to the mortgagee at the time of making the annual installment payment a sum in cash equal to any diminution in the inventory."

detailed account and "to account annually * * * to the trust mortgagee for all net profit * * * up to the time for making such accounting", and deliver to the trust mortgagee all net profits, and in the event the net profits were insufficient to meet the annual installment due on the outstanding notes, "deliver over to the trust mortgagee such additional funds as may be necessary to make said installment payment * * *".

The district court found that the "appointment of a trust mortgagee in the state court proceedings with certain powers over only the business inventory of Pacific Bowling for the benefit of unsecured creditors, did not constitute the act of bankruptcy encompassed by section 3a(5)". It was the conclusion of the district court that "the requisites of a section 3a(5) act of bankruptcy include a finding that (1) a receiver in the bankruptcy sense has been put in charge of (2) all of the property of the debtor for (3) the benefit of all of the creditors, secured and unsecured".

It is clear that the trust mortgage did not cover all of the property of the alleged bankrupt,[4] and that the powers of the trust mortgagee are simply those of any mortgagee of a shifting stock mortgage.[5]

Under these facts did the appointment of the trust mortgagee constitute an act of bankruptcy under Section 3a(5) of the Bankruptcy Act? 1 Collier on Bankruptcy, 14th Ed. 497, § 3.502 summarizes the applicable rule as follows:

"It has been held that 'receiver' as used in this act of bankruptcy means a general equity receiver of all of the debtor's property for the benefit of all of his creditors. Consequently, a foreclosure with receivership as an incident thereof, or a receivership for the benefit of a limited group of creditors, would not constitute the act of bankruptcy. A contrary view, however, has been expressed.[6] It would seem that a foreclosure with an accompanying receivership, being merely a procedure to enforce a valid lien, should not be included. Nor should any similar proceeding to enforce existing liens, since there is no attempt to administer the entire estate and the remaining creditors are not being deprived of anything. A receivership that results in the creation of a lien or liens for less than all of the creditors would fall within the third act of bankruptcy, provided the debtor was insolvent. So it is probable that the fifth clause is designed to include only general receiverships; thus limited it nevertheless attains the general purpose of giving the bankruptcy court supremacy in the administration of the debtor's estate."

A leading case in support of the general rule stated by Collier is Elfast v.

---

4. With reference to other property not covered by the chattel mortgage, the district court said in part: " * * * Pacific Bowling had such assets as cash on hand in the amount of $250.15; accounts receivable in the amount of $12,-125.11, which the Referee found to be 'free assets'; notes receivable in the amount of $5,644.97; and dealers reserves in the amount of $9,827.50. The Referee made findings of fact holding that these latter two 'assets' were pledged items. Although the dealers reserves are held against accounts sold to various financial institutions, they nonetheless provide an equity to the debtor. * * *
"Although all of these items are not readily liquidable, were it incumbent upon the debtor to convert such alleged assets to cash, they are listed as asset items in a business which is operating and has continued to operate and make substantial sales under the most adverse circumstances."

5. As the district court said: "The only item upon which the trust mortgagee received exercisable rights was the inventory of Pacific Bowling. The powers of the trust mortgagee are not those of the typical receiver in bankruptcy, but rather those of an ordinary mortgagee. Before the inventory can be sold, foreclosure procedures must be complied with."

6. Citing In re 211 East Delaware Place Bldg. Corp., N.D.Ill., 1936, 14 F.Supp. 96; which holds that the receiver referred to in section 3a(5) may be a receiver appointed by the court in a foreclosure suit.

Lamb, 2 Cir. 1940, 111 F.2d 434, 436, where the court said:

> "The type of receivership contemplated as an act of bankruptcy is one that involves a liquidation of all the property of the bankrupt within the jurisdiction and in substance amounts to a general assignment of the bankrupt's assets. * * *
>
> "That to constitute an act of bankruptcy a receivership must be a general one has been the rule laid down in numerous decisions."[7]

It is true, as appellants contend, that in three cases the Supreme Court has reserved a ruling on whether the appointment of a foreclosure receiver might be an act of bankruptcy under 3a(5). In each case the Court recognized that "the view has been expressed that to satisfy the fifth act of bankruptcy 'the receivership must be general, as contrasted with a receivership incidental to the foreclosure of a lien' ",[8] but found it unnecessary to determine the question. In Duparquet, Huat & Moneuse Co. v. Evans, 1935, 297 U.S. 216, 224, 56 S.Ct. 412, 80 L.Ed. 591, it was not shown that the receiver was appointed while the debtor was "insolvent". In United States v. State of Texas, 1941, 314 U.S. 480, 483–484, 62 S.Ct. 350, 86 L.Ed. 356, and People of State of Illinois ex rel. Gordon v. Campbell, 1946, 329 U.S. 362, 368, 67 S.Ct. 340, 91 L.Ed. 348, the receivers had been placed in control of all of the debtor's assets, and the Court concluded that "realities require us to treat the proceeding as a general equity receivership * * *".

In this case the trust mortgagee was not in control of all of the debtor's assets. It is necessary to determine whether the appointment of the trust mortgagee pursuant to the plan of arrangement constitutes the appointment of a receiver or trustee under the fifth act of bankruptcy. We agree with the district court that a close question is presented.

While there is no case precisely in point, the appointment of the trust mortgagee is analogous to the appointment of a receiver in an action to foreclose a lien or a receiver in Chapter XI arrangement proceedings. It is the majority rule[9] in cases construing such receiverships, that to constitute an act of bankruptcy, the receivership must be general and include all of the debtor's property. We adhere to this rule and hold that the appointment of the trust mortgagee did not constitute an act of bankruptcy under Section 3a(5) of the Bankruptcy Act.

Judgment affirmed.

---

7. See also Otis Elevator Co. v. Monks, 1 Cir. 1951, 191 F.2d 1000, 1002; Standard Accident Insurance Co. v. E. T. Sheftall Co., 5 Cir. 1931, 53 F.2d 40, 41; In re Turner, W.D.Ky., 1943, 51 F.Supp. 740. Cf. United States v. National Furniture Co., 8 Cir. 1965, 348 F.2d 390, involving the appointment of a receiver in a Chapter XI arrangement.

8. Citing Elfast v. Lamb, supra; Standard Accident Insurance Co. v. E. T. Sheftall Co., supra.

9. In re 211 East Delaware Place Bldg. Corp., supra, is the only case we find which holds that a receivership need not be general.