302 U.S. 121 (1937)
CHICAGO TITLE AND TRUST CO.
v.
FORTY-ONE THIRTY-SIX WILCOX BLDG. CORP.
Nos. 23 and 24.
Supreme Court of United States.
Argued October 21, 1937.
Decided November 15, 1937.
CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.
*121 Mr. Frank H. Towner, with whom Messrs. Silas H. Strawn and George W. Ott were on the brief, for petitioner.
Mr. George I. Haight, with whom Mr. Lewis E. Pennish was on the brief, for respondent.
MR. JUSTICE SUTHERLAND delivered the opinion of the Court.
Respondent was organized as a corporation under the laws of Illinois; and pursuant to those laws it was dissolved. The only property it ever owned or possessed was a building, and the land upon which it stood, situated at *122 No. 4136 Wilcox Avenue in the City of Chicago. This property, when acquired, was subject to the lien of a first mortgage, securing bonds aggregating $95,000, and, subsequent to the acquisition of the property, to a junior mortgage to secure the payment of $15,000. The corporation was organized on April 10, 1929. On May 22, 1931, the Superior Court of Cook County, Illinois, in a proceeding regularly before it, and in accordance with a statute of Illinois, entered a decree dissolving the corporation and declaring its charter and authority as such to be null and void. The decree has never been appealed from or otherwise challenged or assailed. That it became and is now effective cannot be doubted.
On July 10th, certain mechanics' liens were foreclosed, and a sale of the property was thereafter made pursuant to the foreclosure decree. Certificate of sale was issued, entitling the holder thereof to a conveyance of the property upon the expiration of the period of redemption. The right of redemption expired as to respondent on August 5, 1932, and as to creditors on November 5, 1932. No redemption has ever been made or attempted. On October 24, 1931, suit was brought in a state court to foreclose the lien of the first mortgage; and on November 10, 1931, suit was brought in the same court to foreclose the lien of the junior mortgage. A receiver was appointed, who took possession of the property, and was in possession thereof at the time this case was heard in the federal district court. Respondent appeared in both foreclosure suits, but apparently offered no defense.
By the statutes of Illinois (Smith-Hurd Rev. Stat., 1929, c. 32) it is provided:
"§ 14. All corporations organized under the laws of this State, whose powers may have expired by limitation or otherwise, shall continue their corporate capacity for two years for the purpose only of collecting debts due such corporation and selling and conveying the property *123 and effects thereof. Such corporations shall use their respective names for such purposes and shall be capable of prosecuting and defending all suits at law or in equity.

.....
"§ 79. The dissolution, for any cause whatever, of any corporation, shall not take away or impair any remedy given against such corporation, its officers, or stockholders, for any liabilities incurred previous to its dissolution, if suit therefor is brought and service of process had within two years after such dissolution."
The two-year period, within which the corporation could sue, acquire property, or perform any corporate function apart from suits then pending, expired May 22, 1933.
Thus matters remained until May, 1935, when three persons, namely, Mrs. Fay Fischel, her father Hyman Schulman, and her brother Sam Schulman, acquired all the shares of the respondent from the then stockholders. Meetings purporting to be stockholders' and directors' meetings were then held, officers and directors elected, and a resolution was passed authorizing the filing of a petition for the reorganization of respondent under § 77B of the Bankruptcy Act, 48 Stat. 912; 11 U.S.C. § 207.
On June 13, 1935, respondent filed a petition for reorganization under § 77B; and on June 21st, filed a petition praying for an order directing the receiver in the state foreclosure suits to turn over property in his possession and restraining the further prosecution of such suits. Petitioner answered, denying that respondent was a corporation, setting up the corporate dissolution, the foreclosure proceedings and the sale of the corporate property. It also averred that the bankruptcy petition was not filed in good faith.
The special master, to whom the case was referred, found and reported that the bankruptcy petition had been filed in good faith; that respondent had legal capacity to *124 file the petition, and that the petition was sufficient to confer jurisdiction upon the court over respondent and the property in question. The master further found that no deed ever issued under the mechanics' lien foreclosure certificate; and that such certificate was purchased and now is the property of the debtor. However, it appears from the record that the certificate was purchased in connection with the acquisition of the stock by the three persons already mentioned, more than two years after the period of redemption had expired.
The federal district court confirmed the report of the master, appointed a temporary trustee, required the state court receiver to turn over the property to the trustee, and restrain further prosecution of the foreclosure proceedings. On appeal, the court below affirmed the order of the district court, Judge Briggle dissenting. 86 F. (2d) 667.
In the decisions of other circuit courts of appeal, cited by respondent, support may be found for involuntary proceedings in bankruptcy against a dissolved corporation, brought by creditors and based upon an act of bankruptcy committed within four months. The question presented here differs substantially from the questions presented in those cases; and we put them aside as inapplicable, without either approval or disapproval. The sole question now for determination is whether under the facts just detailed, a corporation, dissolved and put out of existence by the state which created it, may, nevertheless, itself invoke the powers of a court of bankruptcy under § 77B. The record does not present a case where creditors are the moving parties, or where there has been any act of bankruptcy committed by the corporation, or where any pertinent law of the state is in conflict with the federal bankruptcy laws.
The decisions of this court are all to the effect that a private corporation in this country can exist only under *125 the express law of the state or sovereignty by which it was created. Its dissolution puts an end to its existence, the result of which may be likened to the death of a natural person. There must be some statutory authority for the prolongation of its life, even for litigation purposes. Oklahoma Gas Co. v. Oklahoma, 273 U.S. 257; National Bank v. Colby, 21 Wall. 609, 615; Oregon Ry. & Nav. Co. v. Oregonian Ry. Co., 130 U.S. 1, 20. See, also, Greeley v. Smith, 3 Story 657, 10 Fed. Cas. p. 1075; Board of Councilmen v. Deposit Bank, 120 Fed. 165, 166 et seq.; Dundee Mtg. & Tr. Inv. Co. v. Hughes, 77 Fed. 855.
Sections 14 and 79 of the Illinois statute seem plain enough on their face; but if any doubt as to their meaning and effect would otherwise exist, that doubt has been set at rest by the decisions of the Illinois appellate courts. In Life Ass'n of America v. Fassett, 102 Ill. 315, decided before the sections under consideration were enacted, the state supreme court held that it was the settled policy of the state that upon the dissolution of domestic corporations, however effected, they were to be regarded as still existing for the purpose of settling up their affairs and having their property applied for the payment of their just debts. See Singer & Talcott Co. v. Hutchinson, 176 Ill. 48, 51; 51 N.E. 622. In American Exchange Bank v. Mitchell, 179 Ill. App. 612, 615-616, the general rule was announced that after a corporation is dissolved, it is incapable of maintaining an action; and that all such actions pending at the time of dissolution abate, in the absence of a statute to the contrary. The state decisions following the enactment of these sections make it clear that this general rule still remains in force in Illinois except for the specific modifications in respect of time and circumstance set forth in §§ 14 and 79. See Dukes v. Harrison & Reidy, 270 Ill. App. 372; Consolidated Coal Co. v. Flynn Coal Co., 274 Ill. App. 405. See, also, A.J. Bates Co. v. United States, 3 F. Supp. 245, *126 248; Charles A. Zahn Co. v. United States, 6 F. Supp. 317, where the Court of Claims held that under these sections of the Illinois statute an Illinois corporation ceased to exist and became incapable of transacting any business whatever in its corporate capacity; and that a suit purporting to be brought by a dissolved corporation after two years to recover internal-revenue taxes paid by the corporation could not be maintained.
It is plain enough, under the Illinois statute, that after the expiration of two years from the date of its dissolution, respondent was without corporate capacity to initiate any legal proceeding  including a proceeding under § 77B, unless we are able to say that the statute, in its terms or in its application, is in conflict with § 77B. While state laws in conflict with the laws of Congress on the subject of bankruptcies are suspended, they are suspended "only to the extent of actual conflict with the system provided by the Bankruptcy Act of Congress." Stellwagen v. Clum, 245 U.S. 605, 613. The dissolution effected under Illinois law is in no way related to a state of insolvency or bankruptcy. Insolvency or bankruptcy as a ground for dissolution is not within the terms or contemplation of the law. Liquidation of a corporation is no part of the purpose of the dissolution; nor is insolvency or liquidation involved in the proceedings to enforce the mechanics' liens or foreclose the mortgages. Quite evidently, the latter were simply ordinary proceedings to enforce liens against the property subject thereto. Straton v. New, 283 U.S. 318, 327-330. The state receivership was purely incidental to the foreclosure suits, and therefore limited and special. It was not an equity receivership within the meaning of § 77B of the Bankruptcy Act. Duparquet Co. v. Evans, 297 U.S. 216, 219-221.
The principle recently announced in Hopkins Savings Assn. v. Cleary, 296 U.S. 315, 337, is applicable here. *127 That case dealt with an intrusion by the Federal Government on the powers of the State over state building-and-loan associations. Speaking of these associations, this court said: "How they shall be formed, how maintained and supervised, and how and when dissolved, are matters of governmental policy, which it would be an intrusion for another government to regulate by statute or decision, except when reasonably necessary for the fair and effective exercise of some other and cognate power explicitly conferred." It is not reasonably possible to find any conflict between § 77B and the Illinois statute or the dissolution proceedings or the lien-foreclosure suits.
The court below relied upon its former decision in the case of In re 211 East Delaware Place Bldg. Corp., 76 F. (2d) 834. That was a case, however, where the bankruptcy petition had been filed by creditors, not by the dissolved corporation; and, therefore, the capacity of the defunct corporation to institute proceedings was not involved. We express no opinion as to the correctness of this decision; but Judge Evans, who wrote the opinion, apparently regarded the distinction as important. For in a later proceeding in the case, 14 F. Supp. 96, 100, he said that the forfeiture of the charter of the corporation did not prevent such a proceeding by creditors, and then added, "The only effect which this loss of corporate existence may have upon a bankruptcy proceeding is in respect to the inability of the corporation to admit acts of bankruptcy or state of insolvency or to file a voluntary petition." (Italics supplied.)
How long and upon what terms a state-created corporation may continue to exist is a matter exclusively of state power. Horn Silver Mining Co. v. New York, 143 U.S. 305, 312-313; Ashley v. Ryan, 153 U.S. 436, 441, 443; New Jersey v. Anderson, 203 U.S. 483, 493. The circumstances under which the power shall be exercised *128 and the extent to which it shall be carried are matters of state policy, to be decided by the state legislature. There is nothing in the federal Constitution which operates to restrain a state from terminating absolutely and unconditionally the existence of a state-created corporation, if that be authorized by the statute under which the corporation has been organized. And it hardly will be claimed that the federal government may breathe life into a corporate entity thus put to death by the state in the lawful exercise of its sovereign authority.
The power to take the long step of putting an end to the corporate existence of a state-created corporation without limitation, connotes the power to take the shorter one of putting an end to it with such limitations as the legislature sees fit to annex. Compare Packard v. Banton, 264 U.S. 140, 145; Davis v. Massachusetts, 167 U.S. 43, 47; Rippey v. Texas, 193 U.S. 504, 509-510. And since the Federal Government is powerless to resurrect a corporation which the state has put out of existence for all purposes, the conclusion seems inevitable that if the State attach qualifications to its sentence of extinction, nothing can be added to or taken from these qualifications by federal authority.
It is suggested that the state cannot keep the corporation alive for its own purposes and deny it life for federal purposes. The proposition need not be challenged, since it is perfectly evident that here the state has reserved nothing for itself which it has denied to the federal authority. The only relevant provisions are those relating to legal proceedings. The state law permits such proceedings to be instituted on behalf of a dissolved corporation within two years; but these proceedings may be brought either in the state courts, or, when appropriate, in the federal courts. After two years, no proceedings may be initiated on behalf of the corporation in either state or federal courts, but such proceedings as *129 have been instituted during that period in any of these courts may be prosecuted to completion. Singer & Talcott Co. v. Hutchinson, supra, pp. 52-53. The right of resort to the courts of the state, and to those of the Nation having jurisdiction, both in respect of the initiation of proceedings and the completion of proceedings already initiated, so far as Illinois law is concerned, stands upon an exact parity.
The aim of this proceeding under § 77B is to bring about a reorganization of a corporation which has been dissolved and shorn of its capacity to initiate any legal proceeding by the state which possesses, in respect of the corporation, the power of life and death. It is not a proceeding on behalf of creditors. It is not a liquidation proceeding having for its object the distribution of the corporate assets. The dissolution was adjudged because the corporation had disobeyed the laws of the state. For that reason the state prohibited the continuance of the corporate enterprise. The stockholders, however, now seek to escape the penalty for this dereliction by resuscitating and continuing the corporation, and, to that end, invoke the aid of a federal statute. This is simply an attempt to thwart a valid state law. Whether the enterprise be continued under the original name and charter of the corporation, or in some new corporate name or guise, can make no difference. Either course would contravene the legislatively-declared policy of the state. Section 77B cannot be regarded as countenancing such a result.
The only power left to the corporation when this proceeding was brought was to finish pending cases begun within two years after its dissolution. With that exception, its corporate powers were ended for all time and for all purposes. It was without authority to purchase the certificate issued at the mechanic's-lien foreclosure sale, or to adopt resolutions authorizing proceedings under *130 § 77B, or to bring a proceeding to effectuate a reorganization under that section. In respect of these matters the corporation was nonexistent.
Decree reversed.
MR. JUSTICE CARDOZO, dissenting.
I am unable to concur in the opinion of the Court.
1. Respondent, though dissolved, was still a corporation in such a sense and to such a degree as to have capacity to maintain a proceeding in bankruptcy for the liquidation of its assets.
By Bankruptcy Act § 4, 11 U.S.C. § 22 (a), any corporation, with exceptions not now material, may become a voluntary bankrupt.
By Bankruptcy Act § 1 (6), 11 U.S.C. § 1 (6), "`corporations' shall mean all bodies having any of the powers and privileges of private corporations not possessed by individuals or partnerships. . . ."
Respondent, when it filed its petition in the bankruptcy court, was still in possession of some of the privileges and powers of private corporations not possessed by individuals or partnerships. True, a decree of dissolution had been entered by a court of Illinois, the place of its domicile. True, two years had gone by since the making of that decree. None the less, the corporation still had the power, if suits were then pending either in its favor or against it, to litigate in its corporate name and through its corporate officials. Life Assn. of America v. Fassett, 102 Ill. 315; Singer & Talcott Stone Co. v. Hutchinson, 176 Ill. 48; 51 N.E. 622. Commercial Loan & Trust Co. v. Mallers, 242 Ill. 50; 89 N.E. 661; Graham & Morton Transp. Co. v. Owens, 165 Ill. App. 100; Griggsville State Bank v. Newman, 275 Ill. App. 11. With the license of Illinois, respondent was actively defending suits for the foreclosure of mortgages on its property when it went into the federal court. A fragment of corporate power was *131 thus untouched by dissolution. Within the definition of the Bankruptcy Act, the body that retained this power, and indeed exercised it too, was still a corporation. There are suggestions in the books that even in the absence of a statute preserving corporate capacities after a decree of dissolution, the bankruptcy power to distribute the assets of an insolvent debtor is not subject to destruction by a withdrawal, possibly a precipitate one, of corporate existence. See, e.g., Hammond v. Lyon Realty Co., 59 F. (2d) 592, 594, 595. Cf. In re Thomas, 78 F. (2d) 602; In re American & British Mfg. Corp., 300 Fed. 839, 847; Cresson & Clearfield Coal Co. v. Stauffer, 148 Fed. 981. The case at hand does not charge us with a duty to decide whether that is so. Here the State has elected to keep the corporation in existence, maimed but still alive. In choosing to create or continue an artificial entity, though with limited and narrow powers, the state subjects its creature to the bankruptcy power of the Congress in so far as that power is directed at juristic beings of that order. Congress has said to Illinois: "If an association with any corporate capacities exists under your laws, bankruptcy  either voluntary or involuntary  is a proper form of liquidation." To this the state responds, or is figured as responding: "An association with corporate capacities does exist under our laws, but it may not go into a court of bankruptcy because we will not give it the capacity to go there. Winding up proceedings for one in its position are in the state tribunals only." The response, even if taken to be authentic, must be held of no avail. It is not within the competence of Illinois by any form of words to preserve the artificial entity for a purpose of her own and destroy it for the purpose of withdrawal from the supremacy of federal law.
2. If respondent has capacity to maintain a bankruptcy proceeding to liquidate its business through the medium of a sale for cash, it has capacity also to maintain a bankruptcy proceeding under § 77B.
*132 A proceeding under § 77B is styled one to give effect to a corporate reorganization. Whatever its form or label, it derives its origin and vitality from the bankruptcy power. Continental Illinois National Bank Co. v. Chicago, R.I. & P. Ry. Co., 294 U.S. 648; Campbell v. Alleghany Corporation, 75 F. (2d) 947; In re New Rochelle Coal & Lumber Co., 77 F. (2d) 881. Only because the remedy is traceable to that power is it constitutional and valid. The notion is baseless that reorganization, even when initiated on the petition of the debtor, is solely or chiefly for the benefit of shareholders. It is even more distinctively and commonly for the benefit of creditors. Cf. In re Central Funding Corporation, 75 F. (2d) 256, 261. The old form of bankruptcy had in view a liquidation of the assets for cash and nothing else, a method of disposing of them that might result in needless sacrifice. The new form of bankruptcy is more flexible and often more efficient, permitting as it does, a disposition of the assets upon credit as well as for cash, and in consideration of shares of stock or bonds to be issued by the buyer. Whoever, being a corporation, may resort to the old form, is at liberty, acting in good faith, to resort to the new. This is so by the express mandate of the statute, which tells us, § 77B; 11 U.S.C. § 207 (a), that "any corporation which could become a bankrupt under § 4 (11 U.S.C. § 22) of this Act" may petition in the new proceeding. By that test a dissolved corporation with capacity requisite to apply to a court of bankruptcy for a liquidation of its assets has the capacity requisite to apply for a reorganization of its business. As to this, the lower federal courts are in general accord. Old Fort Improvement Co. v. Lea, 89 F. (2d) 286; In re 4136 Wilcox Bldg. Corp., 86 F. (2d) 667; Capital Endowment Co. v. Kroeger, 86 F. (2d) 976; In re 211 East Delaware Place Bldg. Corp., 76 F. (2d) 834, 836. Their opinions vindicating that conclusion are instructive and convincing.
*133 This is not to say that every method of reorganization appropriate or permissible for a corporation whose life is unimpaired is appropriate or permissible for one already doomed. The plan of reorganization will be unlawful if it attempts to authorize the debtor, following a decree of dissolution, to do business thereafter in defiance of state law. In general there will be little difficulty in so adapting a decree to the necessities of the particular case as to attain the needed harmony. The opinions already cited suggest appropriate expedients. Old Fort Improvement Co. v. Lea, supra, p. 290; Capital Endowment Co. v. Kroeger, supra, p. 979. Instead of continuing the business through the petitioning debtor or its agents, the decree may permit the formation of another corporation which will take over the assets, issuing shares of stock or bonds to creditors or others. There may be new capital, new shareholders, new directors and officers. Neither in the record nor in the precedents does one find a basis for a holding that the formation of such a corporation will be in conflict with any public policy of the State of Illinois. The old corporation was dissolved for failure to pay franchise taxes and file an annual report. The new one, if created, may promote the welfare of the state both financially and otherwise. Be that as it may, the state will be amply competent to vindicate her own dignity if there is a fraud upon her laws. No plan of reorganization is before us at this time. So far as appears, none has been prepared. Whether the plan to be submitted later will be worthy of confirmation is a question for the future.
Cases may indeed arise where a court will be satisfied upon the filing of the petition that reorganization is not feasible. In that event the proceeding may be dismissed as not brought in good faith. Tennessee Pub. Co. v. American Bank, 299 U.S. 18, 22. At times a decree of dissolution may be a circumstance along with others pointing *134 to that conclusion. Here the good faith of the debtor has been found by the courts below after inquiry by a Master to whom the cause had been referred. The single question presented to us by the petition for certiorari is one of jurisdiction. Did a court of bankruptcy have power to entertain the proceeding at the instance of such a suitor? I hold that power did not fail.
MR. JUSTICE STONE and MR. JUSTICE BLACK join in this opinion.