## In re INTERNATIONAL SUGAR FEED CO.

### No. 13927.

District Court, D. Minnesota, Fourth Division.

May 5, 1938.

Karl H. Covell and Alfred W. Bowen, both of Minneapolis, Minn., for petitioner Harold M. Savage.

Bruce Sanborn, of St. Paul, Minn., and Philip J. Meighen, of Minneapolis, Minn., for bondholders.

Warren Newcome, of St. Paul, Minn., and James I. Best, of Minneapolis, Minn., for creditors.

Mortimer H. Boutelle, Adrian H. David, and M. H. Strothman, Jr., all of Minneapolis, Minn., for the debtor.

NORDBYE, District Judge.

Petitioner bases his right of dismissal on the grounds that the debtor corporation, by reason of the lapse of its charter, had no power to initiate the reorganization proceedings. Objection was made by the debtor and certain creditors to the right of petitioner as a single stockholder to be heard, but, in that the petition filed by the stockholder raises a question as to the right of this court to assume jurisdiction under the circumstances, the court has determined that the matter should be considered on its merits.

The debtor was incorporated under the laws of the state of Minnesota on January 25, 1907, for a term of thirty years. This term expired January 25, 1937. Apparently, through inadvertence, no action was taken to continue or extend said period. On January 7, 1938, a stockholder, the petitioner herein, commenced proceedings in state court for debtor's complete dissolution. This proceeding is still pending, and in said proceeding a certain restraining order has been entered, which will be hereinafter referred to.

The pertinent Minnesota statute (section 7485, Mason's Minnesota Statutes 1927) provides: "Continuance for three years to close affairs—Every corporation whose existence terminates by limitation, forfeiture, or otherwise, shall nevertheless continue for three years thereafter, for the purpose of prosecuting and defending actions, closing its affairs, disposing of its property, and dividing its capital, but for no other purpose."

The motion for dismissal is based on the recent decision of the Supreme Court in Chicago Title & Trust Co. v. Wilcox Bldg. Corp., 302 U.S. 120, 58 S.Ct. 125, 82 L.Ed. ——. This case considered an Illinois corporation which had been dissolved for over two years by a decree of the superior court of Cook county, Ill., and whose charter and authority as such was by said court declared to be null and void. The Illinois statute, Smith-Hurd Rev.Stat.1929, c. 32; Laws 1919, p. 320, § 14, Smith-Hurd Ill.Stats. c. 32, § 157.94 note, pertaining to the rights of corporations whose charters have expired by limitation or otherwise, reads as follows: "§ 14. All corporations organized under the laws of this State, whose powers may have expired by limitation or otherwise, shall continue their corporate capacity for two years for the purpose only of collecting debts due such corporation and selling and conveying the property and effects thereof. Such corporations shall use their respective names for such purposes and shall be capable of prosecuting and defending all suits at law or in equity."

Some five years after the entry of the decree by the Illinois court, the dissolved corporation filed its petition under section 77B. In considering the right of this corporation to proceed under section 77B, the Supreme Court held that the corporation "was without corporate capacity to initiate any legal proceeding—including a proceeding under section 77B. * * *" 302 U. S. 120, at page 126, 58 S.Ct. 125, 127, 82 L.Ed. ——. And, 302 U.S. 120, on page 129, 58 S.Ct. 125, 129, 82 L.Ed. ——, "The only power left to the corporation when this proceeding was brought was to finish pending cases begun within two years after its dissolution. With that exception, its corporate powers were ended for all time and for all purposes." It seems reasonably clear that the Supreme Court predicated its decision of dismissal on the uncontroverted fact that the title company had been stripped of all its corporate powers, except to continue with suits brought during the two-year period. It concluded that the corporation, being legally dead for all other corporate purposes, could not be resuscitated by proceeding under section 77B, and that federal authority was impotent to add to or take away from the qualifications attached by the state "to its sentence of extinction." It reasoned, therefore, that it could not commence any type of legal action nor take any affirmative steps in

instituting any bankruptcy proceeding. The court did not rule, however, on the rights of creditors to initiate such proceedings after the expiration of the two-year period, nor did the court indicate its views as to the right of the corporation to "initiate" 77B proceedings during the two-year period. The language used by the court limits the actual holding to the particular state of facts that were presented. The Supreme Court has often stated that its opinions are necessarily limited to their own facts.

The query therefore presented herein is whether, under section 7485 of Mason's Minnesota Statutes 1927, a dissolved corporation, during the three-year period referred to therein, is clothed with sufficient corporate powers to initiate proceedings for its reorganization under section 77B of the Bankruptcy Act, as amended.

■ Under the Minnesota statute, a dissolved corporation, generally speaking, enjoys most of the powers with which a corporation is vested, except the right to continue in the business for which it was established. This section of the statute has been construed by many Minnesota decisions, and a liberal interpretation has been given to the right of a dissolved corporation to dispose of its property and close its affairs.

In the early case of Hanan v. Sage, C.C., 58 F. 651, Judge Nelson of this court was considering the dissolution statute then in effect, which is substantially the same as the present section. In commenting upon the right of a dissolved railroad company to convey its lands to a trustee in trust in order to wind up its business, the court stated with reference to the statute (p. 652) : "This is one of the laws of Wisconsin, which was in force when the territory of Minnesota was established; it was declared to be valid and operative therein, and has been the law of Minnesota ever since. The corporation, under this statute, did not cease to exist after the decree of the supreme court, but continued its organization, and retained its officers and directors, and its stockholders continued to be such, with all the authority possessed before. True, the corporation only existed for the purpose of winding up its corporate business, and closing up its concerns; but to do this it had full control over all its property, and could dispose of it for the purposes indicated in the statute, subject, however, to the rights of creditors and stockholders."

That a conditionally dissolved corporation may become a general, voluntary bankrupt has been generally recognized by the authorities where it appears that the state has continued its corporate powers to sue and be sued, to dispose of its property, and to close its affairs. In Partan v. Niemi, 288 Mass. 111, 113, 192 N.E. 527, 97 A.L.R. 473, the court stated (page 528):

"Examination of the provisions of these sections makes it clear that the dissolution of the corporation was conditional. Its corporate existence was not immediately extinguished but continued for three years after the operative date of St.1932, c. 139, with special reference to the prosecution and defence of suits by or against it and the settlement of its affairs. The only positive prohibition is that the business for which it was incorporated shall not be continued. It is a necessary conclusion from the statutory words that something in the nature of a corporation must continue and remain in being to enable it to sue and to be sued. Action and suit import by their very terms the existence of persons capable of being and actually made parties thereto. Brooks v. Boston & Northern Street Railway Co., 211 Mass. 277, 278, 97 N.E. 760. A nonexistent corporation can hardly be a party to a suit or to an action. Persistence of corporate entity is clear also from the provision as to the appointment of a receiver in appropriate instances and empowering the court to continue the receivership and the 'existence of the corporation' so long as may be necessary to accomplish the ends described in the statute. Moreover, an extinct corporation can hardly be revived as provided in section 56. That provision imports something of continued corporate entity. In Crease v. Babcock, 23 Pick. 334, 346, 34 Am.Dec. 61, it was said, in discussing a similar statute, that, although for some purposes the charter of the corporation had expired, it nevertheless was continued 'for certain, definite, specific and limited purposes. This qualified prolongation of the existence of the corporate body, is in the nature of an administration of its estate. * * * But it has a nominal existence for the purpose of closing its concerns in the most convenient manner. * * * ' * * * *

"One proper purpose and suitable method of closing the affairs of a corporation might be proceedings in bankruptcy. The word 'suit' in section 51 must be interpreted in a broad sense, in view of the purpose intended to be accomplished by the statute. * * * The pertinent sections of our statutes and the decisions rendered concerning them contain no restrictions as to the methods to be followed, nor the courts whose jurisdiction may be invoked by corporations conditionally dissolved in gradually settling and closing their affairs. There is no exclusion of resort to the bankruptcy courts established by the United States. As used in section 51 and in order to effectuate the legislative intent disclosed by its main provisions, the word 'suit' embraces a voluntary petition in bankruptcy. A chief purpose of the Bankruptcy Act is to enable the affairs of a bankrupt to be settled and his property distributed among those entitled to receive it."

It will be observed that the Minnesota statute in question permits a dissolved corporation during the three-year period to prosecute and defend actions, close its affairs, dispose of its property, and divide its capital. There is no indication that the statute sought to prevent a corporation from resorting to bankruptcy during this three-year period. In order equitably and feasibly to close its affairs, the utilization of the machinery of the bankruptcy court may be highly desirable. If an insolvent corporation before dissolution may resort to bankruptcy in order to distribute its property to its creditors, no cogent reason is advanced which supports the view that a dissolved, insolvent corporation possessing powers to sue and to be sued, to close its affairs and distribute its property, cannot seek the aid and assistance of the federal bankruptcy statute to accomplish that which the state dissolution statute expressly permits. Certainly, the powers remaining in a dissolved corporation must be construed so that it may in the most expeditious manner fairly effectuate that which the statute contemplates. The granting of corporate powers to prosecute actions, close its affairs, and distribute its property fairly embraces a voluntary petition in bankruptcy. True, the bankruptcy court deals with corporate assets and not with corporate charters. Where a bankrupt corporation possesses a charter that has not been terminated by limitation or otherwise, its corporate existence is not affected by general bankruptcy proceedings. If a dissolved corporation goes through general bankruptcy, its corporate charter is not revived, extended, or modified by rea-

son of the bankruptcy. The dissolved corporation simply expires under and according to state laws, while the creditors are afforded the protection of the bankruptcy statute in the distribution of the assets. But, under these circumstances, it cannot be urged that the bankruptcy liquidation of a dissolved corporation thwarts the state law or hinders or impedes the exercise of that which exclusively belongs to the state. If, therefore, a dissolved corporation possessing the powers enumerated in this statute during the three-year period may file during that period a voluntary petition in general bankruptcy, do such corporate powers extend as well to the institution of proceedings under section 77B? The Bankruptcy Act, tit. 11, U.S.C., § 1 (6), 11 U.S.C.A. § 1 (6), defines corporations as follows: "'Corporations' shall mean all bodies having any of the powers and privileges of private corporations not possessed by individuals or partnerships and shall include limited or other partnership associations organized under laws making the capital subscribed alone responsible for the debts of the association."

Title 11 U.S.C., § 207(a), 11 U.S.C.A. § 207(a), which pertains to corporate reorganizations, provides: "Any corporation which could become a bankrupt under section 22 of this title * * * may file an original petition."

The debtor herein is an eligible corporation under section 22. There is no contention that section 77B can revive or extend the corporate life of a dissolved corporation. Its proceedings cannot contravene the "legislatively declared policy of the state." Chicago Title & Trust Co. v. Wilcox Bldg. Corp., supra. But it is elementary that these reorganization proceedings may be fully consummated within the purview of section 77B and in no way transgress the state law which has exclusive jurisdiction over the corporate life of the bankrupt. It would be an unwarranted assumption for this court to conclude otherwise at this stage of the proceedings. Instead of continuing its business through the present corporation, the bankruptcy court may find it entirely feasible and fair to the creditors and all concerned to permit the forming of a new corporation which will take over the assets of the debtor. If this latter plan is adopted and reorganization is consummated along these lines, in what manner will the proceedings then contravene the state law? Merely because the debtor corporation petitioned to reorganize under section 77B does not give rise to any valid assumption that the reorganization plans must inevitably obstruct or defeat the dissolution statute of the state. The corporate life of this debtor has terminated by inadvertence. It has not flaunted the laws of the state. The formation of a new corporation to succeed it would not be repugnant to the laws or the policy of the state. Creditors should not be unnecessarily made to suffer by reason of the omissions of the directors or shareholders. If it does occur that no reorganization proceedings can be effected that will permit the full and complete operation of the dissolution statute of the state, the entire proceedings may be dismissed. To invoke such an order at this time would seem to be premature.

In passing, the court may call attention to another provision of the Minnesota statutes, chapter 242, Laws of Minnesota for 1937, whereby it is provided that a corporation, whose period of duration has expired not more than twenty years prior to the date of the enactment of the statute, may extend or renew such period by appropriate action of a majority of the stockholders. The right of the debtor to proceed by appropriate action under this statute has been temporarily denied to it by a restraining order issued out of the state court where the proceedings initiated by the stockholder are pending. Whether the corporation can, in light of the circumstances, later avail itself of this statute does not need to be determined at this time. Suffice it to say, that if this court does assume jurisdiction herein and finds that the petition for reorganization was filed in good faith, it may deem it necessary and within its power to permit the dissolved corporation, if it is eligible, to proceed under chapter 242, Laws of Minnesota for 1937, notwithstanding the existence of the state proceedings and the restraining order therein. A bankruptcy proceeding under section 77B more often redounds to the benefit of the creditors than the stockholders, and it is entirely probable that the court would hold that the rights of creditors in bankruptcy should not be limited by any order in state dissolution proceedings.

That proceedings under section 77B may be instituted by a dissolved corporation to which is continued by state laws sufficient corporate life to initiate the proceedings has been recognized by numerous decisions.

In Capital Endowment Co. v. Kroeger, 6 Cir., 86 F.2d 976, the court considered the effect of the expiration of the corporate charter of a debtor by reason of an order of ouster entered against it in quo warranto proceedings, and stated (page 979): "The order of ouster entered against the debtor in the quo warranto proceedings by the Ohio Supreme Court cannot defeat the jurisdiction of the Bankruptcy Court over the assets of the corporation. Austin v. Thomas, 78 F.2d 602 (C.C.A. 6); Hammond v. Lyon Realty Co., 59 F.2d 592 (C.C.A. 4). The debtor has substantial assets other than those represented by the assets of the two building and loan associations. Based upon these, it may still be able to present a feasible plan of reorganization to the Bankruptcy Court. The fact that the debtor has been ousted from its corporate franchises in Ohio neither destroys its property nor its title thereto. We cannot assume that any plan of reorganization approved in the bankruptcy court will fail to contemplate restoration of the debtor's corporate rights if that is possible, or failing, the organization of a new corporation to administer its assets for the benefit of creditors and shareholders. The organization of a successor corporation is not without the purview of reorganization plans under section 77B."

In Old Fort Improvement Co. v. Lea, 89 F.2d 286, the Circuit Court of Appeals of the Fourth Circuit, in considering a similar question, said (page 289): "It has been said, under certain conditions, that the filing of a petition in bankruptcy by a corporation is a corporate act which under state statutes can ordinarily be performed only by an existing body. In re Vassar Foundry Co. (D.C.) 293 F. 248, 249; Vassar Foundry Co. v. Whiting Corp. (C. C.A.) 2 F.2d 240; In re 211 East Delaware Place Bldg. Corp. (D.C.) 14 F.Supp. 96, 100. But as we have seen, the statutes of South Carolina provide that a corporation of that state, whose charter has been cancelled, shall be continued a body corporate for the purpose of prosecuting and defending suits by or against it, but not for the purpose of continuing the business for which it was established. While the particular form of suit involved in a petition for reorganization under section 77B was not contemplated by the state legislature when these statutes were passed, they may reasonably be construed to authorize a suit for reorganization either by or

against the corporation, provided that a new corporation is formed and no attempt is made to revive the dissolved corporation contrary to the provision of the state law. * * *"

And on page 290:

"We think that the question as to whether the vesting of title to property of the dissolved corporation in the directors under the state law precludes a reorganization under section 77B should be answered in the negative. It is clear that the directors hold the corporate property merely as trustees pending its distribution amongst the interested parties, and this exercise of authority by the state should not interfere with the paramount power of the federal government in bankruptcy. We so held in effect in Hammond v. Lyon Realty Co., supra, where title was vested in receivers appointed by the Maryland court under the provisions of the state law.

"The record shows that the proposed plan of reorganization in the pending case contemplates the formation of a new corporation to take over the assets and business of the old. Nevertheless it was thought in the court below that since the new corporation was formed merely for the continuation of the business, the arrangement would be offensive to the statutes of the state. In our opinion, this interpretation is unnecessarily strict, for the mandate of the state has been respected in the dissolution of the old corporate body and a new corporation to continue the business can come into existence only in compliance with state authority. It serves no apparent purpose of the state to restrict the scope of the remedies afforded by the federal law even if it is within the power of the state to do so."

The authority of the two cases cited is not affected by the holding in Chicago Title & Trust Co. v. Wilcox Bldg. Corp., supra.

To summarize, therefore, it would seem that where it appears that the state has continued in a dissolved corporation sufficient powers to initiate proceedings under section 77B, the petition should not be dismissed until it appears that the only means of reorganization that can be effected will contravene the exclusive powers granted by the state over the corporate charter of the debtor. In absence of express statutory exclusion to the dissolved

corporation of corporate powers enabling it to proceed under the bankruptcy statute, it would appear that the continuing powers vested in the debtor under the Minnesota statute should be liberally construed so as not to deny it the right to avail itself of the means of distributing its property and closing its affairs which will be most beneficial and equitable to the creditors and stockholders, and which may be conducted with due recognition of the rights of the sovereign state which created it. In the instant situation, it appears that the state statute did grant to the debtor during the three-year period sufficient powers to initiate bankruptcy proceedings, and it further appearing that a reorganization may be effected without contravening the state dissolution statute or the legislatively-declared policy, it must follow that the petitioner's objection to the jurisdiction of the court should be overruled, and it is so ordered. An exception is allowed to the petitioning stockholder.

It is further ordered that the continued hearing on debtor's petition be heard at 10 o'clock a. m. on May 21, 1938, at the Federal Building, Minneapolis, Minn.