## SEABOARD TERMINALS CORPORATION et al. v. STANDARD OIL CO. OF NEW JERSEY et al.

District Court, S. D. New York.

Oct. 17, 1940.

O'Connor & Farber, of New York City (Arnold T. Koch and Henry K. Urion, both of New York City, of counsel), for plaintiffs.

Louis Mead Treadwell, of New York City (Henry B. Potter, Stafford Smith, and John J. Manning, all of New York City, of counsel), for defendants.

ABRUZZO, District Judge.

The plaintiffs commenced this action against the defendants in June of 1936, charging a violation of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note. A conspiracy to destroy the business of the plaintiffs in the State of Maryland is the basis of this suit. They are seeking treble damages. The defendants, Standard Oil Company of New Jersey and The American Oil Company, are no longer party defendants in this action. The suit has survived as against the Socony-Vacuum Oil Company, Incorporated.

There are three motions before the court, all made by the only remaining de- fendant, who will be hereinafter referred to as "Socony". The plaintiff, Seaboard Terminals Corporation will hereinafter be referred to as "Seaboard", and the plaintiff, Seaboard Midland Petroleum Corporation, will be known as "Midland."

The first motion is to dismiss the complaint as to the plaintiff "Seaboard". The second is to dismiss the complaint as to "Midland". These two motions must be determined upon the affidavits submitted by the parties herein.

In the third motion, "Socony" moved for a directed verdict although the jury found in favor of the plaintiff. "Socony" pleaded the statute of limitations of the State of Maryland in its answer. The court has ruled that the law of the State of Maryland governs. The statute of limitations bars any action brought in Maryland after three years have elapsed.

The cause of action sued upon arose in Maryland not later than 1933. "Socony" contends that it should have been and could have been served in the State of Maryland. It claims that it was doing business in that state in the early part of 1933 through 1934, 1935 and 1936 and up until the time of the institution of this suit, in this court. It is not disputed that the New York action was commenced after the statutory period of three years had run. By order of the court, this issue was tried by the court and a jury. The jury found in favor of the plaintiffs, indicating that it was their conclusion the defendant was not doing business in the State of Maryland so that it could have been sued and served in that state.

The motion for a directed verdict referred to this particular phase of the case.

With respect to the motion for the dismissal of the complaint as to the plaintiff "Seaboard", the defendant claims that this particular plaintiff had no legal right to commence this suit. "Seaboard" was a Maryland corporation. This plaintiff commenced this action on June 29, 1936. In 1939, this corporation had not paid the taxes due the State of Maryland and in accordance with the laws of the State of Maryland, the Governor issued a proclamation directing the charter of this corporation be forfeited for nonpayment of taxes. By reason of this forfeiture, it is claimed by the defendant that "Seaboard" lost its right to maintain any suit either at law or in equity.

As to the second motion for a dismissal of the complaint against the plaintiff "Midland", an analogous situation exists as that just outlined with reference to plaintiff "Seaboard". The charter of "Midland" was also forfeited by proclamation of the Governor of Maryland for nonpayment of taxes. On March 16, 1940, the charter of "Midland" was revived pursuant to the provisions of the Maryland Tax Law. Its charter was revived after the proper tax was paid.

Relative to the issue of the statute of limitations, various witnesses were called by the defendant in an endeavor to prove that they were actually doing business in the State of Maryland from 1933 to 1936. A brief resumé of this testimony follows:

The witness, William H. Correa, testified that the Socony-Vacuum Oil Company did not have an office in Maryland in 1933 and that the Standard Oil Company of New Jersey was the agent (pp. 45 and 49).

Charles J. Copley, another witness, stated that during 1933 he was in Maryland a total of two weeks and that Standard Oil Company of New Jersey was the agent (pp. 62 and 64).

Bertram C. Voshell (called "Boshell" in the minutes) testified that Socony Vacuum Oil Company, Incorporated, filed a certificate in Maryland on July 12, 1934. This witness was in the publication department and was in Maryland only part of a day in 1933 (pp. 67, 69 and 71).

Harry A. Norris said he went to Baltimore in May of 1933 to establish an office, but could not remember the address or telephone number and stated that the salary checks came through the Philadelphia office (pp. 74 and 82).

The witness, Raymond A. Townley, made calls once a month in Maryland, working out of the Philadelphia office. He did not recall the street nor whether there was any name on the door of the Marine Sales Office which he stated was in Maryland (pp. 88, 92 and 95).

Howard L. Newton made about twenty trips to Maryland between 1930 and 1936. He stated he did not see the office but was told it was upstairs. He took his business calls at the hotel at which he was staying (pp. 97, 104 and 105).

Hunter D. Adams visited Baltimore about five times and stated that the oil shipments came from New Jersey (pp. 110 and 112).

On page 116, Osborne M. Gordon stated there was no office in Maryland. George B. Palmer answered that he worked through the New York Office (p. 118) and Arthur H. Pritchard testified that there was no warehouse in Maryland that belonged to the defendant "Socony" (p. 120).

The Clayton Act, dealing specifically with the venue and service of process, provides as follows: "Sec. 12. That any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 38 Stat. 736, 15 U.S.C.A. § 22.

In order for the defendant to sustain its position under this act, it is necessary that it must have been continuously transacting a substantial business in Maryland, even though it could not be found in that district for the service of process. There does not seem to be any dispute that no one could be found for the service of process until July 12, 1934 when "Socony" first filed its certificate of doing business in Maryland.

A careful perusal of the evidence will lead to the determination and conclusion that the business done by the defendant in Maryland was at best spasmodic and not continuous. The Standard Oil Company of New Jersey was the agent of the defendant but it has not been indicated to what extent this agency functioned.

The defendant had no warehouse nor any other place to store its products in the state nor did it have an office for the transaction of its business for any consecutive period of time; especially during the three years in question.

The defendant has cited the cases of Eastman Kodak Company of New York v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684, and International Harvester Company v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, but they do not seem to be applicable here. In the latter case, it was pointed out that Louisville, Kentucky, had been designated as the principal place of business of the company in compliance with the statute of Kentucky. This case held that the International Harvester Company of America had been carrying on a continuous course of business and not a single transaction.

The agents not only solicited orders but were permitted to receive payment in money, checks or drafts. They were also empowered to take notes. The business of the International Harvester Company of America in Kentucky was of a substantial nature.

In the matter of Eastman Kodak Company of New York v. Southern Photo Materials Co., supra, it was determined that for many years prior to the institution of the suit, the Eastman Kodak Company had carried on a continuous and substantial business with many dealers in Atlanta and other places in Georgia to whom they sold and shipped goods. A large part of their business was obtained through their traveling salesmen. They had demonstrators exhibiting and proving the superiority of their products. Local dealers were supplied by the Eastman Company. The business was of a continuous and substantial character.

■ "Socony" claims to be entitled to a directed verdict on the ground that the facts conclusively show that they were doing business in the State of Maryland from 1933 to 1936 of a substantial and continuous nature; and that service could have been effected upon them in that state. The facts elicited do not lead to the conclusion desired by the defendant. The jury was justified in finding in favor of the plaintiff, based on the evidence adduced. The requirements of the Clayton Act were not met by "Socony".

The facts set forth in the International Harvester case, supra, were much stronger and even in that opinion it was stated that the question was a close one.

In the instant case, the certificate of doing business was not filed by "Socony" until July 12, 1934. The testimony of the defendant's witnesses indicates that "Socony" was not doing business continuously in Maryland in 1933 and it did not have an office there.

Upon all the facts, without a jury, the court would have reached a similar conclusion. The defendant "Socony" is not entitled to a direction of the verdict on this issue.

■ The motion to dismiss the complaint against "Seaboard" must be granted. The charter was forfeited by proclamation of the Governor of Maryland for nonpayment of taxes. The act provides that the charters of all corporations which have not paid their taxes, "shall be ipso facto repealed, annulled and forfeited and the powers granted to such corporations shall be inoperative, null and void, without the necessity of proceedings of any kind either at law or in equity." Code Pub.Gen.Laws Supp.Md.1935, art. 81, § 144. This statute makes no provision for the continuance of suits at law or in equity.

The case of United States v. Federal Surety Co., 4 Cir., 1934, 72 F.2d 961, 964, held that there is no basis for the continuance of any pending actions when the charter of a corporation expires.

The case of Chicago Title & Trust Company v. Forty-One Thirty-Six Wilcox Building Corporation, 302 U.S. 120, 58 S. Ct. 125, 82 L.Ed. 147, reached the conclusion that a corporation, dissolved and put out of existence by the State which created it, may not invoke the powers of a court of bankruptcy under 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. There was a statute of Illinois, Smith-Hurd Stats. c. 32, § 157.94 note which provided: "Sec. 79. The dissolution, for any cause whatever, of any corporation, shall not take away or impair any remedy given against such corporations, its officers, or stockholders, for any liabilities incurred previous to its dissolution, if suit therefor is brought and service of process had within two years after such dissolution." Two years after the State of Illinois dissolved the Forty-One Thirty-Six Wilcox Building Corporation, a petition for reorganization under 77B of the Bankruptcy Act was filed. The court decided that a private corporation in this country can exist only under the express law of the state or sovereignty by which it was created. Its dissolution puts an end to its existence, the result of which may be likened to the death of a natural person. There must be some statutory authority for the prolongation of its life, even for litigation purposes. How long and upon what terms a state-created corporation may continue to exist is a matter exclusively of state power.

It is clear, therefore, that "Seaboard" cannot continue to maintain this suit.

■ The motion pertaining to the dismissal of the complaint against the plaintiff "Midland" finds a different state of facts. After its charter had been forfeited, and on March 16, 1940, "Midland" paid the state of Maryland the taxes due and owing, and its charter was revived pursuant to paragraph 4, subdivision (e), of

Section 144½ of Article 81 of the Maryland Code Supp.1935 which provides that: "all real and personal property, rights and credits of said corporation at the time its charter became void, and which were not disposed of prior to the time of such revival shall be vested in such corporation, after such revival, as fully and amply as they were held by said corporation at and before the time its charter became void * * * as if its charter had at all times remained in full force and effect." This particular section of the Maryland Code indicates that the State has complete authority to regulate the charter issued to a corporation, including the revival of one which has been forfeited for nonpayment of taxes, which point is borne out in the case of Chicago Title & Trust Company v. Forty-One Thirty-Six Wilcox Building Corporation, supra.

Therefore, "Midland" has the power to maintain this suit.

The motion for a directed verdict is hereby denied. The motion for a dismissal of the complaint as against "Seaboard" is granted; and the motion for a dismissal of the complaint as against "Midland" is denied.

Settle order on notice in accordance with this decision.