6 F. Supp.2d 865

ASOCIACION COLOMBIANA DE EXPORTADORES DE FLORES, ET AL., PLAINTIFFS *v.* UNITED STATES, DEFENDANT, AND FLORAL TRADE COUNCIL, DEFENDANT-INTERVENOR

Consolidated Court No. 96–09–02209

(Decided July 2, 1998)

*Akin, Gump, Strauss, Hauer & Feld, L.L.P., (Patrick F. J. Macrory)* for Plaintiff Equiflor Corporation.

*Frank W. Hunger*, Assistant Attorney General of the United States; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Velta A. Melbrencis*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; Of Counsel, *Lucius B. Lau*, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for Defendant; *Karen L. Band*, Attorney-Advisor, Office of the Chief Counsel for Import Administration, Department of Commerce, for Defendant.

*Stewart and Stewart, (Mara Burr, James R. Cannon, Jr., Terence P. Stewart)* for Defendant-Intervenor Floral Trade Council.

## MEMORANDUM OPINION AND ORDER

POGUE, *Judge:* On April 22, 1998, pursuant to U.S. CIT Rule 59(a), Plaintiff, Equiflor Corporation ("Equiflor"), filed a motion for reconsideration of the Court's judgment in *Asociacion Colombiana de Exportadores de Flores v. United States*, 22 CIT 173, slip op. 98–33 (Mar. 25, 1998)*("Asociacion Colombiana")*. Plaintiff argues that in *Asociacion Colombiana* the Court overlooked the critical argument presented by Equiflor that a company whose assets have been sold and that was dissolved is not capable in law or in fact of receiving delivery of an antidumping questionnaire. Equiflor Mem. P. & A. Supp. Mot. Recons. at 4 ("Equiflor Mot.").

## BACKGROUND

The background to this case is set forth in the Court's prior opinion. There, the Court sustained the application by the Department of Commerce ("Commerce") of the first-tier 76.60 percent best information available ("BIA") rate to the flower grower El Majui ("Majui") because of the company's failure to respond to the Department's questionnaire.

*Asociacion Colombiana*, 22 CIT at 215, slip op. 98–33, at 49–51. Thereby, the Court denied the motion for judgment on the agency record filed by Equiflor, the importer of Majui's flowers. *Id.*

## DISCUSSION

A motion for reconsideration under U.S. CIT Rule 59 is within the sound discretion of the court. *St. Paul Fire & Marine Ins. Co. v. United States*, 16 CIT 984, 984, 807 F. Supp. 792, 793 (1992), *aff'd*, 16 F.3d 420 (Fed. Cir. 1993); *Sharp Elecs. Corp. v. United States*, 14 CIT 1, 2, 729 F. Supp. 1354, 1355 (1990). The purpose of a rehearing is not to relitigate the case but, rather, to rectify a fundamental or significant flaw in the original proceeding. *Arthur J. Humphrey's, Inc. v. United States*, 15 CIT 427, 427, 771 F. Supp. 1239, 1241 (1991), *aff'd* and *adopted*, 973 F.2d 1554 (Fed. Cir. 1992). If the moving party fails to "establish that there was a fundamental or significant flaw in the conduct of the original proceedings," this will result in the motion being denied. *Brookside Veneers, Ltd. v. United States*, 11 CIT 197, 199, 661 F. Supp. 620, 622 (1987), *rev'd on other grounds*, 6 Fed. Cir. (T) 121, 847 F.2d 786, *cert. denied*, 488 U.S. 943 (1988).

Equiflor claims that the Court overlooked the critical issue in finding that Majui received service of Commerce's questionnaire because the company had gone out of business prior to the questionnaire being sent out. Equiflor supports its contention by (1) citing to *Title Co. v. Wilcox Bldg. Corp.*, 302 U.S. 120, 124–25 (1937)(noting that the dissolution of a corporation puts an end to its existence, the result of which may be likened to the death of a natural person), and (2) alleging that, under Colombian law, commercial entities lose all legal status upon dissolution and liquidation and are therefore incapable of receiving service of documents, and can only be the subject of legal proceedings that were initiated prior to the act of dissolution. Equiflor Mot. at 4.

The issue in *Title Co.* was whether a dissolved corporation itself could initiate legal proceedings after the two year post-dissolution period provided by Illinois law. 302 U.S. at 123–27. In contrast, here the administrative review was initiated by Commerce against the company eight months after it was dissolved. The *Title Co.* court expressed no opinion as to whether proceedings could be instituted against a dissolved corporation. *Id.* Thus, *Title Co.* is inapposite.

Equiflor's citations to the Colombian law are also not persuasive.[1] The fact that Majui had "legally dissolved" under Colombian law is not dispositive with respect to Commerce's determination that the company received the questionnaire.[2] Rather, the question presented is whether Commerce's conclusion that Majui received its questionnaire

---

[1] Specifically, Equiflor notes that under Colombian law, commercial entities such as Majui lose all legal status upon dissolution and liquidation, and are therefore incapable of receiving service of documents. Equiflor Mot. at 4 (citing Commercial Code of Colombia, Article 222.) Equiflor also points out that the Colombian Council of State has held that a corporation that has been liquidated can only be the subject of legal proceedings that were initiated prior to the act of dissolution. Equiflor Mot. at 4 (citing Council of State Opinion 3769 (Feb. 19, 1993)).

[2] Even if a corporation is dissolved, it will generally wind down its business.

and subsequent application of BIA to the company was supported by substantial evidence.

When examining Commerce's factual determinations to decide whether they are supported by substantial evidence, the court must determine whether the record contains "such relevant evidence as a reasonable mind might accept as adequate to support [Commerce's] conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)(quoted in *Matsuhita Elec. Indus. Co. Ltd. v. United States*, 3 Fed. Cir. (T) 44, 51, 750 F.2d 927, 933 (1984). Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966)(citations omitted).

Section 776(c) of the Tariff Act of 1930, as amended 19 U.S.C. § 1677e(c)(1988), states that Commerce "shall, whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation, use the best information otherwise available." Under Commerce's regulations, BIA is used whenever the Department (1) Does not receive a complete, accurate, and timely response to Commerce's request for factual information; or (2) Is unable to verify, within the time specified, the accuracy and completeness of the factual information submitted. 19 C.F.R. § 353.37(a).

In *Allied-Signal Aerospace Co. v. United States*, 996 F.2d 1185, 1190 (Fed. Cir. 1993), the Federal Circuit approved a BIA scheme in which Commerce selects first-tier BIA when a respondent refuses to cooperate with its requests for information or significantly impedes the administrative review, and second-tier BIA, which is less adverse, when a respondent substantially cooperates but still fails to provide requested information in a timely manner or in the required form. *Id.* at 1190–91.

In the final results, Commerce stated that Majui had not provided evidence that the Department's service of its questionnaire was defective. *Certain Fresh Cut Flowers From Colombia*, 61 Fed. Reg. 42,833, 42,862 (Dep't Commerce 1996)(final results admin. reviews). If Commerce found service to be defective then it would have applied the "all others" 3.10 percent rate to the company. By way of example, Commerce explained that it applied the "all others" rate to another flower grower, My Flowers, because the company provided evidence that service was defective. *Id.* Specifically, My Flowers maintained that the address to which the Department sent materials was out of date. In support of this argument, My Flowers provided registration certificates from the Colombian Chamber of Commerce, authenticated by the U.S. Embassy and the Ministry of Foreign Relations. *Id.* My Flowers also claimed that the company at its old address received the questionnaire, but failed to let My Flowers know of its arrival. My Flowers submitted documentation sup-

porting that the individual who signed the delivery record for the questionnaire was not a My Flowers employee. *Id.*

Equiflor argues that service of Commerce's questionnaire to Majui was defective. To support this argument, Equiflor claims that the courier that had allegedly delivered the questionnaires to a number of flower growers, including Majui, was unable to supply proof of delivery when requested to do so. Equiflor Mot. at 2, n.4. However, the courier letter dated July 19, 1995, from TNT Skypack International Express to the respondent's law firm explains the circumstances: because TNT had changed local agents, it could not obtain copies of original receipt signatures for its May 1994 deliveries. Equiflor Mot. Ex. A. Subsequently, Commerce also sent a copy of the questionnaire via Federal Express in August, 1994. Equiflor Mot. Ex. B. The second delivery was acknowledged with the signature of an individual, Maria Christina Vargas. *Id.* Equiflor argues that Ms. Vargas could not have been employed by Majui, since the company had ceased to exist one year earlier. Equiflor Mot. at 3. However, Equiflor provides no evidence to support this assertion.

In this case Commerce investigated over three hundred producers and/or exporters of the subject merchandise. *Certain Fresh Cut Flowers From Colombia*, 60 Fed. Reg. 30,270 (Dep't Commerce 1990)(prelim. results admin. reviews). Pursuant to the Department's usual practice Commerce forwarded its questionnaire to the respondents under investigation to the address listed for each company.[3] Many of these were small family-owned companies. *See e.g.*, Pls.' Equiflor & Espirit Miami Mem. Supp. Mot. J. Agency R. at 3–5 (noting that Sunset Farms, owned by a husband and wife, operated a single farm, and sold flowers produced by a smaller farm, El Paico, owned by their daughter). A number of firms were dissolved or sold during the period of investigation. *See e.g.*, Eden's Mem. Sup. Mot. J. Agency R. at 3–4 (stating that in May 1994, the shareholders of Groex, S.A. resolved to liquidate the company); Pls.' Equiflor & Espirit Miami Mem. Sup. Mot. J. Agency R. at 3–5 (noting that in March 1993, the family owning Sunset Farms decided to leave the flower business and sold the main farm to Flores El Roble); 61 Fed. Reg. at 42,836 (stating that Agricola de los Alisos, Colflores, Flores Estrella, Flores Mountgar, and Flor Colombia S.A. were no longer in business).

Under these circumstances, where a questionnaire is acknowledged and accepted for delivery twice, Commerce may reasonably conclude that the receiver will either respond or direct the questionnaire to the appropriate party. The burden is then on the respondent to provide evidence that service was defective. *See Williams v. Administrator of*

---

[3] Commerce's regulations require the Department to examine "normally * * * not less than 60 percent of the dollar value or volume of the merchandise" sold during a period of investigation. 19 C.F.R. 353.42(b)(1). To determine which companies in a given country are responsible for these sales, Commerce requests certain commercial information from the appropriate U.S. embassy. ITA *Antidumping Manual*, Ch. 4. at 7 (Rev. 6/93). Since most respondent companies are represented by legal counsel, presentation of the Department's questionnaire is often made to attorneys at the Department of Commerce offices. If the respondent is not represented, the questionnaire is delivered via mail or international air express. *Id.* at 10.

*NASA*, 59 C.C.P.A. 1329, 463 F.2d 1391, 1400 (C.C.P.A. 1972)("[W]here a party is in a position to have peculiar knowledge of the facts with regard to an issue, the burden of proof as to that issue lies upon that party.")(citing McCormick, Evidence, § 337 (2d ed. 1972)), *cert. denied*, 412 U.S. 950 (1973). This rule is particularly appropriate in this case because of the administrative burden that Commerce faced. Moreover, any other policy would allow respondents to avoid answering Commerce's questionnaires by simply rearranging or reorganizing companies in order to evade service. As Commerce explained in the final results, "failure to apply a non-cooperative BIA rate to Flores el Majui would reward noncompliance with our administrative review and would encourage other firms to liquidate themselves and reincorporate under new names." 61 Fed. Reg. at 42,862.

In conclusion, there is no record evidence to suggest that either the first or second deliveries were unreliable. Thus, the Court did not "overlook" any evidence in assessing whether substantial evidence supported Commerce's determination. Accordingly, the Court denies Equiflor's motion for reconsideration.